CITY OF LIVINGSTON et al. v. MONIDAH TRUST.

(Circuit Court of Appeals, Ninth Circuit. October 27, 1919.)

No. 3310.

1. ABATEMENT AND REVIVAL ☞12—ACTION ☞69—STAY; OTHER ACTION PENDING IN STATE COURT.

Action in federal court, of which it has jurisdiction by reason of diversity of citizenship and amount involved, need not be stayed or dismissed because of pendency in the state court of action concerning the same matter.

2. COURTS ☞312(8)—FEDERAL COURTS; CONVEYANCE TO GIVE JURISDICTION.

Right to maintain suit in the federal court is not affected by the fact that property was conveyed to plaintiff to give the parties necessary diversity of citizenship; the conveyance being without reservation of right.

3. WATERS AND WATER COURSES ☞188(3)—WATERWORKS FRANCHISE IN PERPETUITY.

Grant by a city to individuals, their successors and assigns, of franchise for waterworks is in perpetuity, in the absence of limitations, though accompanying contract for furnishing the city water for fire hydrants is for only 20 years, with provision for renewal, on terms to be agreed on if city does not exercise option to buy.

4. WATERS AND WATER COURSES ☞188(4)—FRANCHISE; PROCEEDING FOR FORFEITURE.

Though there be annexed to a waterworks franchise a tacit condition that it may be lost by misuser or nonuser, there must be a proceeding for forfeiture by the state, or by the city on authority given by the state; a resolution declaring such forfeiture being insufficient.

5. JUDGMENT ☞736—RES JUDICATA; MATTERS INVOLVED.

Relative to question of res judicata, the question of perpetuity of a waterworks franchise held, in suit to quiet title to the franchise, not involved or determined in prior suit for specific performance of contract accompanying franchise for renewal at end of 20 years of contract for

furnishing water to city: it having been merely held that it was a contract incapable of specific performance.

6. WATERS AND WATER COURSES ⬥➤188(4)—WATERWORKS FRANCHISE; CONSTRUCTION OF DECREE QUIETING TITLE.

Decree in suit to quiet title to waterworks franchise, that it is perpetual, does not mean that it is not subject to the tacit conditions of the grant, that it may be lost and forfeited by appropriate remedy for misuser or nonuser.

Appeal from the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Suit by the Monidah Trust against the City of Livingston and others to quiet title to its franchise under which it is engaged in supplying water to the City of Livingston and to the hydrants, pipes and mains, claimed by the plaintiff as part of its water system. Decree for plaintiff, and defendants appeal. Affirmed.

It is alleged in the bill of complaint filed October 24, 1917, that the defendant the city of Livingston, on or about the 5th of August, 1889, being then without any waterworks plant or system of fire protection and desiring to secure the erection of such waterworks plant for the purpose of procuring water for public and private purposes, including fire protection, passed an ordinance, numbered 24, granting to C. S. Stebbins, Isaac Orschel, and Samuel Bundock, their successors and assigns, the privilege of erecting, maintaining, and conducting a waterworks plant in the city of Livingston, said ordinance providing among other things the regulation, requirements, and conditions under which said plant should be maintained and conducted; that under said ordinance or franchise so granted the said Stebbins, Orschel, and Bundock, their successors and assigns, were to furnish the said city of Livingston with 25 double discharge fire hydrants at the time of the completion of said waterworks and to furnish additional double discharge fire hydrants thereafter as the same might be ordered by the said city; that the said city agreed to pay therefor annual rentals; that at the expiration of 20 years from the date of the completion of said waterworks system the said city might, at its option, purchase the said waterworks plant and all pipes, pumps, reservoirs, and other property rights including the water rights and appurtenances connected with said works, at a price to be agreed upon by three commissioners, one to be appointed by the said city of Livingston, one by the said Stebbins, Orschel, and Bundock, their successors and assigns, and the third to be chosen by these two: that at the expiration of 20 years from the date of the completion and testing of said waterworks, if the city of Livingston did not purchase such waterworks upon the terms mentioned, it would renew the contract with said Stebbins, Orschel, and Bundock, their heirs, successors, or assigns, for a period of 20 years longer upon terms to be then mutually agreed upon, provided however, that such terms should in no case exceed the prices fixed and stipulated by Ordinance No. 24, nor should the renewal of the contract in any case annul the operation of said ordinance in its full force and effect; that said Stebbins, Orschel, and Bundock promised and agreed upon their part to comply with all things required by said ordinance to be done and performed by them, and accepted the terms, conditions, stipulations, and agreements contained in said ordinance; that on the 1st day of June, 1890, said Stebbins, Orschel, and Bundock, and their successors and assigns, did complete and place in operation said waterworks plant, and have since maintained and conducted the same in accordance with the terms and conditions of said ordinance, supplying the said city of Livingston and its inhabitants with pure and wholesome water for public and private uses; that the Monidah Trust is the successor and assignee in interest of said Stebbins, Orschel, and Bundock, and their successors and assigns, and is the owner of said waterworks system and all of the property, reservoirs, water rights, pumping plants, machinery, and apparatus used in connection with the operation and maintenance of said

⬥➤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

waterworks system; that more than 20 years have expired from the date of the completion and testing of said waterworks and plant, and the city of Livingston has wholly failed and neglected to exercise the option to purchase the said waterworks system or the other property used in the construction and operation of the same; that since the expiration of said 20-year period mentioned the said city of Livingston has failed, neglected, and refused to renew said contract for the supplying of water to the said city and its inhabitants, and for several years last past has neglected and refused to pay plaintiff the hydrant rentals provided in said ordinance, and has neglected and refused to comply with any of the terms and conditions in said ordinance, claiming the same to be void and unenforceable; that on or about the 30th day of September, 1913, the predecessors in interest of said Monidah Trust (Livingston Waterworks) commenced a suit in the state court (against the city of Livingston and its aldermen) for the purpose of enforcing the terms and conditions of said ordinance; that upon the trial of said cause a judgment was entered in favor of the defendant, wherein it was adjudged that said contract was void and unenforceable; that upon appeal to the Supreme Court of the state the judgment of the trial court was affirmed (Livingston Waterworks v. City of Livingston et al., 53 Mont. 1, 162 Pac. 381, L. R. A. 1917D, 1074); that since the rendition of the judgment and the affirmance by the Supreme Court the plaintiff and its predecessors in interest have offered to sell said waterworks system and the property connected therewith to the city of Livingston upon a fair, just, and equitable appraisement and valuation, but said city of Livingston has refused to consider any of the propositions of sale made by said plaintiff or its predecessors in interest, and has determined to erect an independent municipal waterworks system, and has procured a bond election at which a bond issue to the amount of $225,000 was voted for the purpose of raising funds for the construction of such independent municipal plant; that said bonds have been issued and sold, and the city threatens to and as plaintiff is informed and believes has actually commenced the erection of said independent municipal plant, and wholly refuses to consider any proposition of sale or purchase of the plaintiff's waterworks system; that. plaintiff, because of its failure to negotiate a sale of its waterworks system to the city of Livingston, and because of its failure to procure a renewal of the franchise and contract under which it has supplied water to said city and its inhabitants, and because of the fact that plaintiff's plant will be wholly destroyed by the action of the city in erecting an independent municipal plant, desires to discontinue said waterworks system in said city, withdraw therefrom, and remove all its pipes, machinery, and other personal property used in connection with said waterworks system, and abandon the conduct of its waterworks system in the said city of Livingston; that said city of Livingston, refuses to permit plaintiff to discontinue its said waterworks system, or remove its pipes, machinery, and other personal property used in connection with said waterworks system in said city, and refuses to grant plaintiff permission to dig up the mains, pipes, and hydrants belonging to plaintiff and used in connection with said waterworks system, and threatens to use force for the purpose of preventing and restraining plaintiff from removing its said property from the city of Livingston; that said city of Livingston and its board of aldermen claim that plaintiff has no right whatever to the streets or; the city of Livingston, and as plaintiff is informed and believes claims the ownership of the pipes, machinery, and hydrants used in connection with said waterworks system, and refuses and will continue to refuse to permit plaintiff, to withdraw its property from said city of Livingston.

· The prayer of the plaintiff in this original complaint is that the defendant be restrained and enjoined from in any manner interfering with the plaintiff in the disposal of its said property, and that a writ of injunction be issued, pending the suit, enjoining and restraining the defendants from interfering with or preventing plaintiff from discontinuing the conduct of its waterworks system, or from removing and disposing of its property used in connection therewith.

ı In an amended bill of complaint filed November 8, 1917, there are attached as exhibits a copy of Ordinance No. 24, passed April 5, 1889, and also Ordinance No. 25, passed September 22, 1889, amending Ordinance No. 24 by sub-,

stituting for these words in the latter, "and thereby supply said city with pure and wholesome water for public and private uses," the following words: "And thereby supply said city with as good and wholesome water for public and private uses as can be taken from the main Yellowstone river in the vicinity of Livingston."

On a hearing on an order to show cause why an injunction should not issue as prayed for in the bill of complaint, and on a motion on the part of the defendants to dismiss the bill for the reason, among other things, that another suit between the same parties, involving the identical subject-matter and the same controversy, and asking for the same relief, was pending undetermined in the state court at the time this suit was commenced, the motion to dismiss the bill of complaint was denied, and the motion to vacate the order to show cause granted, with 10 days allowed to the plaintiff within which to file an amended bill.

In a second amended bill of complaint, filed December 6, 1917, the allegations of the first amended complaint are repeated in substance, with additional allegations to the effect that defendants claim that Ordinances Nos. 24 and 25, and all rights and privileges claimed by plaintiff thereunder, have fully terminated, and assert that the city is now the owner of all the rights and easements of plaintiff, together with the pipes, mains, conduits, hydrants, and other personal property in the city of Livingston; that the city, acting through its agents, officers, and employés, has entered upon plaintiff's property and with force and arms has torn up and damaged certain mains, conduits, and pipes belonging to plaintiff and used in connection with the said system of waterworks; that defendants assert the right to further tear up, interfere with, and destroy plaintiff's property, and claim and assert that they intend to at some time in the future further interfere with and take possession of the same, and prevent plaintiff from further carrying on and conducting said system of waterworks in said city of Livingston; that defendants' claims are false and groundless, and constitute a cloud on plaintiff's title to the property, franchise, and easements described: that said claims are without any right whatever, and the defendant city has no right, title, or interest in or to said property, franchise, easements, or any part thereof.

The prayer of this last amended complaint is that it be decreed that plaintiff's privileges, rights, franchise, and easements in the streets of said city are perpetual, and plaintiff's title thereunder is good and valid, and that the defendants be enjoined and restrained from asserting any claim whatever into or to said property.

The defendants, in their answer to the second amended complaint, filed March 29, 1918, deny all the allegations in the amended complaint material to the controversy involved in this appeal, except that the defendants admit that in a suit pending in the state court, brought by the plaintiff against the defendant city, the city does claim an estate and interest adverse to the plaintiff in and to plaintiff's alleged franchise, easements, privileges, rights, and property in connection with said waterworks system; that said claim is set forth in a counterclaim in its answer in that suit, to the extent of the pipes and mains underneath the streets of the city, and also that said rights, privileges, and so-called franchise claimed by plaintiff have been terminated and forfeited.

In the suit in the state court, here referred to, the plaintiff herein brought suit on May 31, 1917, and filed an amended complaint on June 12, 1917, against the city of Livingston, the state board of land commissioners, and the registrar of the state land office, to restrain and enjoin the defendants from proceeding with and completing the sale of certain bonds issued by the city of Livingston for the purpose of procuring water supply and constructing an independent municipal water system for the city.

On June 18, 1917, the application and motion of the plaintiff for an injunction was denied by the state court. An appeal was taken to the Supreme Court of the state from this order, and on the 16th of October, 1917, the appeal was dismissed. In the counterclaim set up in the answer of the city of Livingston to plaintiff's complaint in the state court, and referred to in its answer in this case, it is alleged: "That since said month of June, 1910, said Livingston Waterworks Company has been and now is without any right or

authority to use the streets and alleys in the city of Livingston and the real property of said city of Livingston for the uses and purposes mentioned in said Ordinances Nos. 24 and 25, or otherwise, and that said Livingston Waterworks Company ever since said month of June, 1910, has been and now is a trespasser in and upon the streets, avenues, and alleys of said city of Livingston."

In this answer the defendants prayed for a judgment against the plaintiff, declaring the city of Livingston to be the owner of the pipes and mains and fire hydrants and pipe connections underneath the surface of the streets, avenues, and alleys heretofore used by the plaintiff in connection with its said waterworks in supplying the city and its inhabitants with water and that it be adjudged that the plaintiff has no right, title, or interest therein, and that plaintiff be enjoined and restrained from further using, operating, or interfering with said mains, hydrants, pumps, machines, and machinery on and in the streets and alleys of the said city, and for such other and further relief as might be deemed meet and equitable in the premises.

To this answer and counterclaim the plaintiff appears to have demurred, and the action is now pending in the state court upon that demurrer.

On August 16, 1917, a deed of conveyance was executed by the Livingston Waterworks and the Livingston Waterworks Company, purporting to convey the whole system of waterworks belonging to the grantors, together with all the mains, pipes, hydrants, and other property connected with the operation and management of the waterworks system to the Monidah Trust, a Delaware corporation and the plaintiff herein.

As has been stated, on October 24, 1917, the Monidah Trust, plaintiff, filed its original bill of complaint in this case. On the same day it obtained an order upon the defendants to show cause why an injunction should not issue, restraining the defendants from interfering with plaintiff's management, control, and disposition of its waterworks system and all property connected therewith, and from interfering with its right to remove its said property from the city of Livingston, and from in any wise interfering or preventing plaintiff from discontinuing the conduct of its waterworks system in the city of Livingston, or removing or disposing of said property. The defendants moved to discharge the order to show cause on the ground of the said former suit pending in the state court, and also that the transfer of the property to the plaintiff was colorable and a fraud on the jurisdiction of the court. The court overruled the motion to discharge the order to show cause, and, retaining jurisdiction of the case, granted plaintiff permission to amend the bill of complaint, and thereupon it filed its second amended bill of complaint.

Upon the hearing of the case the court directed the entry of a decree in favor of the plaintiff adjudging it to be the owner of the right, privilege, easement, and franchise to construct, maintain, and operate a water system in the city of Livingston for the purpose of supplying said city and its inhabitants with water, granted and conferred by Ordinances Nos. 24 and 25 of said city, and that the right, privilege, easement, and franchise so granted is perpetual; that the plaintiff is also the owner of the water system constructed and installed pursuant to said ordinances, and now used for the purpose of supplying said city and its inhabitants with water. The title of the plaintiff to said right, privilege, easement, and franchise is by the decree quieted against all claims or pretensions of said city, its officers, agents, and representatives, that the same has expired, or has been canceled or forfeited by the city or its representatives, and the title of said plaintiff to said water system is quieted against all claims or pretensions of said city, its officers, agents, or representatives, that said city is the owner of any of the pipes, mains, or other parts of said system, and that the said city, and each and all of its officers, agents, and representatives, are enjoined and restrained from asserting any claim that said franchise is not in full force and effect, or that the said plaintiff is not the owner of said water system and the whole thereof, and from in any manner interfering with the full and free use and enjoyment by said appellee of the right, privilege, easement, franchise, and water system aforesaid. From this decree the defendants have brought the case to this court.

Frank Arnold, City Atty., of Livingston, Mont., and Edward Horsky, of Helena, Mont., for appellants.

James E. Murray, of Butte, Mont., and Gunn, Rasch & Hall, of Helena, Mont., for appellee.

Before ROSS, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). The parties will be designated as in the court below.

[1] It is contended by the defendants that the lower court erred in refusing to stay proceedings in this case pending the disposition of the case of Livingston Waterworks Co. v. City of Livingston et al., No. 4393 in the state court. The action in this court is between citizens of different states, the amount involved is jurisdictional and sufficient, and the case is of such a nature that the decree will not interfere with the jurisdiction of the state court over the property upon which the judgment of the state court would operate.

In Doane v. California Land Co., 243 Fed. 67–70, 155 C. C. A. 597, 600, this court held under the authority of McClellan v. Carland, 217 U. S. 268–282, 30 Sup. Ct. 501, 505, 54 L. Ed. 762, that:

" 'The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the federal court having jurisdiction, for both the state and federal courts have certain concurrent jurisdiction over such controversies, and when they arise between citizens of different states the federal jurisdiction may be invoked, and the cause carried to judgment, notwithstanding a state court may also have taken jurisdiction of the same case.' McClellan v. Carland, 217 U. S. 268–282, 30 Sup. Ct. 501, 505, 54 L. Ed. 762; Falls City Const. Co. v. Monroe County (D. C.) 208 Fed. 482–483; Wolf v. District Court, 235 Fed. 69–74, 148 C. C. A. 563."

[2] It is also contended by the defendants that the jurisdiction of the lower court in this case was fraudulently invoked for the reason that the conveyance by the Livingston Waterworks to the plaintiff was colorable and made for the sole purpose of conferring jurisdiction in the federal court in this case. This question was also involved in Doane v. California Land Co., supra. On this question we held, under the authority of Lehigh Mining & Manufacturing Co. v. Kelly, 160 U. S. 327, 16 Sup. Ct. 307, 40 L. Ed. 444, that:

"The privilege of a grantee or purchaser of property, being a citizen of one of the states, to invoke the jurisdiction of a Circuit Court of the United States for the protection of his rights as against a citizen of another state—the value of the matter in dispute being sufficient for the purpose—cannot be affected or impaired merely because of the motive that induced his grantor to convey, or his vendee [vendor] to sell and deliver, the property, provided such conveyance or such sale and delivery was a real transaction by which the title passed without the grantor or vendor reserving or having any right or power to compel or require a reconveyance or return to him of the property in question."

There is no evidence in this case that the title passed to the plaintiff with any reservation whatever on the part of the grantors or vendors that there should be a reconveyance or return of the property conveyed. We are of the opinion that the District Court properly exercised jurisdiction in the case.

[3, 4] It is next contended that Ordinance No. 24 was a contract for only 20 years, and expired on July 1, 1910. The plaintiff admits the expiration of the contract, but not the expiration of the franchise. It is contended by the plaintiff that, as the grant of the franchise was not limited in its duration either by the grant itself or by the law of the state, it was made perpetual. In support of this contention the plaintiff cites the case of Owensboro v. Cumberland Telephone & Telegraph Co., 230 U. S. 58, 33 Sup. Ct. 988, 57 L. Ed. 1389, where the Supreme Court held that:

"The grant by ordinance to an incorporated telephone company, its successors and assigns, of the right to occupy the streets and alleys of a city with its poles and wires for the necessary conduct of a public telephone business, is a grant of a property right in perpetuity, unless limited in duration by the grant itself or as a consequence of some limitation imposed by the general law of the state, or by the corporate powers of the city making the grant [citing a number of cases]. If there be authority to make the grant and it contains no limitation or qualification as to duration, the plainest principles of justice and right demand that it shall not be cut down, in the absence of some controlling principle of public policy. This conclusion finds support from a consideration of the public and permanent character of the business such companies conduct and the large investment which is generally contemplated. If the grant be accepted and the contemplated expenditure made, the right cannot be destroyed by legislative enactment or city ordinance based upon legislative power, without violating the prohibitions placed in the Constitution for the protection of property rights."

But in New York Electric Lines v. Empire City Subway, 235 U. S. 179–194, 35 Sup. Ct. 72, 59 L. Ed. 184, L. R. A. 1918E, 874, Ann. Cas. 1915A, 906, the Supreme Court refers to the tacit conditions annexed to grants of franchises and that they may be lost by misuser or nonuser. But in such a case there must be proceedings by the state for a forfeiture. Whether the state should proceed directly by quo warranto, or whether it should authorize the municipality to pass a resolution or ordinance of repeal or revocation, leaving the propriety of its course to be determined in an appropriate legal proceeding in which the default of the grantee may be adjudicated, was a question of state law with which the court was not concerned in that case.

In the present case the defendants allege in their answer to the second amended complaint, by way of a counterclaim, that on the 25th of March, 1918, a resolution was passed and adopted by the city council of Livingston, and approved by the mayor of said city, declaring forfeited and terminated the said alleged privilege and franchise under said Ordinances Nos. 24 and 25 for, among other things, failure of performance by the plaintiff and its predecessors in interest and failure to do equity. It is not alleged that this resolution was authorized by the state, which alone could authorize proceedings for a forfeiture of a franchise of this character. Without such authority the action of the city council and mayor in passing the resolution was no defense to this action, and the court was right in excluding the evidence of this counterclaim.

[5] The defendants contend that it was determined by the Supreme Court of the state in the case referred to as the "Specific Performance Case" (Livingston Waterworks Co. v. City of Livingston et al.

[No. 3720] 53 Mont. 1, 162 Pac. 381, L. R. A. 1917D, 1074) that the plaintiff had no franchise, but that question was not involved in this case. What the court had before it was the terms of the contract set forth in Ordinances Nos. 24 and 25, and the determination of the court was that it was the settled law of the state of Montana that an agreement to enter into an agreement upon terms to be afterwards settled between the parties could not as a general rule be enforced; that the construction placed upon the ordinances by the grantees that the renewal of the contract implied that the terms should remain unchanged and the contract was to continue for another period of 20 years, subject only to an adjustment of rates did not avoid the difficulty since under such construction the clear contemplation of the contract and its acceptance would be that the grantees had the exclusive right to supply the municipal needs of the city for water for the period of 40 years subject only to an adjustment of rates at the end of 20 years; that as such a contract was not within the power of the city the court would not assume without convincing reasons that any such contract was intended.

The court points out that the contract comprehended other things besides rates and prices, as, for example, conditions of quality, quantity, distribution, pressure, in short the elements that go to make up "service supposed in 1889 to be adequate to the needs of the city for 20 years, but which the experience of that time might demonstrate to be either inadequate or unnecessary." The court was therefore of the opinion that the words "renew the contract" did not mean an extension of the same contract for the additional period, subject only to a rate adjustment; that they were used to signify that, in case the city did not purchase the plant, there should be further contractual relations between the parties for an additional period of 20 years touching the same subject-matter, and having in view the same general purposes, but with such differences in terms—with all the word implies— as the experience of 20 years might lead the parties to insist upon. If this interpretation was correct, the court was of the opinion that the judgment of the lower court was proper. But, assuming that the renewal contract referred only to rates or prices, the court held that it could not be specifically enforced, since its terms were such as the parties themselves should fix, and they could not be made certain by means provided or contemplated by the contract itself. The court concludes its opinion as follows:

"The appellant [Livingston Waterworks Company] is simply left without a contract, and relegated to its rights and duties as a public utility, just as any water company is whose contract has expired. It must rest content in the fact that, possessing the only source of supply in Livingston, it may continue to furnish that city and its inhabitants with all the water needed by them upon a fair and reasonable basis—at least until competition, lawfully established, shall compel it to share the field."

Plainly, neither the franchise nor its duration was involved in that case. All the court did was to recognize its existence and continuance, and this is all we have properly before us in this case. The franchise granted the plaintiff's predecessor in interest, and claimed by it in Or-

dinances Nos. 24 and 25, has not been forfeited by any authorized legal proceedings, and was not in issue in this case.

With respect to the hydrants, pipes, and mains claimed by the plaintiff as part of its water system, no forfeiture to the defendants has been shown, and no acquisition of title by the defendants appears in the evidence. The ownership of that property, therefore, continues in the plaintiff. The exclusion of the judgment roll in the "specific performance case" and of the remittitur from the Supreme Court of the state in that case was therefore correct. The exclusion of evidence tending to show grounds of forfeiture of the franchise because of the quality of the water supplied from the Yellowstone river and its quantity for fire protection was also correct. This evidence might be relevant and material in proceedings for forfeiture, but not in this case.

[6] Our construction of that portion of the decree of the District Court "that the right, privilege, easement, and franchise so granted is perpetual," is that the franchise, though perpetual, is always subject by appropriate remedy to forfeiture for misuser or nonuser, and we read the decree as in harmony with such limitations. They are the "tacit conditions" annexed to the grant. New York Electric Lines Co. v. Empire City Subway Co., supra.

The decree is therefore affirmed.