## PRUDENTIAL INS. CO. OF AMERICA v. ZIMMERER et al.

### Civ. A. No. 256.

District Court, D. Nebraska, Lincoln Division.

June 26, 1946.

Joseph H. McGroarty, of Omaha, Neb., for plaintiff.

J. J. Thomas and Charles F. Barth, both of Seward, Neb., for defendants Joan Zimmerer and Helena Albers.

Paul H. Bek, of Seward, Neb., for defendants Wilhelm Luebbe and Anna L. Luebbe.

Robert T. Cattle, defendant, pro se.

DELEHANT, District Judge.

The present ruling is made upon a request for a stay of proceedings in this case pending the determination of the issues in a case between the same parties directed to the same vital matter presently pending in the District Court of Seward County, Nebraska. The course and history of this action should be noted briefly, to the end that the setting of the request may be perceived.

On November 15, 1944, the plaintiff filed its complaint against the two originally designated defendants, praying for the quieting in it of title to one hundred sixty acres of Seward County, Nebraska, land which it had allegedly acquired through the foreclosure in the District Court of Seward County, Nebraska, of a real estate mortgage. Joan Zimmerer answered, claiming that she as sole heir of John F. Zimmerer, deceased, and Helena Albers, as grantee from John F. Zimmerer during his lifetime, were the owners in equal shares of both that tract and another of one hundred twenty acres claimed and occupied by Wilhelm Luebbe and Anna L. Luebbe, as grantees from the plaintiff; that the foreclosure proceeding in question which between January 27, 1933 and June 1936 the plaintiff had conducted to its completion, resulting in the plaintiff's ostensible acquisition through judicially confirmed sheriff's sale of the title to the entire two hundred eighty acres, was wholly void in that the trial judge who acted throughout it, and particularly in the entry of the decrees of foreclosure and for the confirmation of sheriff's sale, was and is related as a brother-in-law to the defendant Robert T. Cattle (the judge's deceased wife, the mother of his several living children, having been Cattle's sister), who was a party defendant to the foreclosure action, and, at the time of that action, held the legal title to the land, but only as security for the payment of a debt of John F. Zimmerer, its then owner; and that the judge was, therefore, disqualified from acting in the case under the provisions of Section 24-315, R.S.Neb.1943. So far as it is material here, that section provides that:

"A judge * * * is disqualified from acting as such in the * * * district * * * court, except by mutual consent of the parties, in any case * * * where he is related to either party by consanguinity or affinity within the fourth degree, * * * and such mutual consent must be in writing and made a part of the record, * * *."

By order of this court, Helena Albers, Wilhelm Luebbe, Anna L. Luebbe and Robert T. Cattle were brought in as additional parties defendant. All of them subsequently answered. Helena Albers essentially adopted the answer of Joan Zimmerer. The Luebbes set out their title to the one hundred twenty acre tract conveyed to them by the plaintiff after the foreclosure action had been completed. Cattle's answer was merely a disclaimer.

In that state of the pleadings, trial, or at least a partial trial, of the action was had on October 5, 1945, and leave was given for the service and delivery to the trial judge of briefs successively by the several parties. Later, on December 7, 1945, the defendants Zimmerer and Albers, by leave of court, filed a reply to the answer of the Luebbes. And on the following day, they filed a request for leave to withdraw their rest announced at the trial and to introduce additional testimony in connection with the submission of the case. On February 6, 1946 the plaintiff, with leave of court, filed a reply to the answers and cross petitions of Joan Zimmerer and Helena Albers. On the same day the parties to this action filed a stipulation of cer-

tain facts, "without prejudice to the introduction of any additional testimony or exhibits of any of the parties hereto, at the trial of this cause." Thus, all of the parties, the plaintiff included, treated the case as only partially tried; and the briefs in it have been presented only in part.

Then, on March 4, 1946, Joan Zimmerer and Helena Albers, without leave of court, filed a so-called supplemental answer in which, among other things, they alleged their institution in the District Court of Seward County, Nebraska, of a proceeding to vacate and avoid the several judgments and decrees in the original foreclosure case prosecuted by the plaintiff, upon the ground that they are and always have been null and void; and requested the stay of this proceeding pending the determination of that action. The court promptly set that request for hearing in March 23, 1946. On the day before the hearing the plaintiff filed a reply and countershowing from which, and by the admission of opposing counsel upon oral argument, it appears that the new proceeding was brought in equity on February 20, 1946 in the District Court of Seward County, Nebraska, by Joan Zimmerer and Helena Albers, as plaintiffs, against the Prudential Insurance Company of America, Wilhelm Luebbe, Anna Luebbe, and Robert T. Cattle, as defendants; that the petition in it sets out a comprehensive history of the plaintiff's original lien upon the two hundred eighty acres, of the forclosure proceedings, including their alleged invalidating infirmity, of the transfer in 1937 of title to the one hundred twenty acre tract to the Luebbes, and of the succession of Joan Zimmerer and Helena Albers to the alleged equity of redemption of John F. Zimmerer, who has died since the completion of the foreclosure action, and prays for the vacation of the decrees in the foreclosure case and for the allowance of redemption of the entire two hundred eighty acres of land by Joan Zimmerer and Helena Albers from the original mortgage debt and for an accounting of rentals as an incident thereto. The hearing on the request for stay of this court's final ruling in, and of the further prosecution of, this case was had as scheduled; and briefs on the issue so made have just been submitted.

Meanwhile, the plaintiff in the present case made an abortive effort, as a defendant in the new state court case, to remove it to this court upon the ground of diversity of citizenship and upon the claim of a separable controversy. This court promptly remanded that action because, as brought, it concerns the two hundred eighty acres as a single entity, and includes the Luebbes (residents of Seward County, Nebraska) as necessary parties defendant.

■ Thus tardily, therefore, and for the first time, an issue has been completely submitted to this court for a ruling in the case that was originally brought here; and that issue is whether this court should forbear, pending the determination of the recently filed suit in the state court, to exercise the jurisdiction which it is conceded by all parties to possess. It may be acknowledged that the direction which the court's ruling should take is not left free from doubt or perplexity by the reported decisions that are related to it. For, even in those opinions in which it is declared that the trial court's judgment in the matter of allowing a stay lies in its discretion, it is made clear that that discretion itself must be informed, rational and judicial, resting in recognized considerations of equity, good order and justice, and free from arbitrariness or caprice.

■ The action in this court is one solely in rem. The original foreclosure proceeding was also an action in rem, as is the pending equitable proceeding for the vacation of the decrees in that earlier case. At least for the purpose of this ruling, that characteristic of the present suit is neither nullified nor minimized by the circumstance that the affected res is not formally reduced to the custody or possession of the court. Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390; Farmers' Loan & Trust Co. v. Lake Street Elevated R. Co., 177 U.S. 51, 20 S.Ct. 564, 44 L.Ed. 667; Kline v. Burke Construction Co., 260 U.S. 226, 43 S.Ct. 79, 81, 67 L.Ed. 226, 24 A.L.R. 1077.

■ No controversy exists between the parties upon a primary rule of jurisdiction and procedure as between state courts and federal courts. Recognizing that a different rule obtains in actions strictly in per-

sonam, they agree that when two suits in rem, or quasi in rem, involving the same issue are pending, one in a federal court, the other in a state court, the court which first assumes jurisdiction over the property may maintain and exercise that jurisdiction to final effect and to the exclusion of the other court. The rule was well stated in Kline v. Burke Construction Co., supra, in the following language:

" * * * where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court. Where the action is in rem the effect is to draw to the federal court the possession or control, actual or potential, of the res, and the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached. The converse of the rule is equally true, that where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction." Hagan v. Lucas, 10 Pet. 400, 9 L.Ed. 470; Taylor v. Carryl, 20 How. 583, 15 L.Ed. 1028; Freeman v. Howe, 24 How. 450, 16 L.Ed. 749; Covell v. Heyman, supra; Farmers' Loan & Trust Co. v. Lake Street Elevated R. Co., supra; Palmer v. State of Texas, 212 U.S. 118, 29 S.Ct. 230, 53 L.Ed. 435; United States v. Bank of New York & Trust Co., 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331; Princess Lida of Thurn and Taxis v. Thompson, 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285; Toucey v. New York Life Ins. Co., 314 U.S. 118, 62 S.Ct. 139, 86 L.Ed. 100, 137 A.L.R. 967; Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9; Butler v. Judge of United States District Court, 9 Cir., 116 F.2d 1013; Wolf v. District Court, 9 Cir., 235 F. 69; Dennison Brick & Title Co. v. Chicago Trust Co., 6 Cir., 286 F. 818; Amusement Syndicate Co. v. El Paso Land Improvement Co., D.C. Tex., 251 F. 345; Union Sulphur Co. v. Texas Gulf Sulphur Co., D.C. Tex., 32 F.2d 517; City of Orangeburg v. Southern Railway Co., D.C.S.C., 45 F.Supp. 734; and Westfeldt v. North Carolina Mining Co., 4 Cir., 166 F. 706.

The right to proceed of the court first acquiring jurisdiction being vindicated, the plaintiff advances to the less obvious contention that its prompt and full exercise is always an imperative duty, especially in a situation comparable to that now before the court; and this argument is bottomed chiefly upon the well known case of McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 505, 54 L.Ed. 762. Judge Carland of the United States District Court for the District of South Dakota had entered in his court an order staying a case before him until the disposition of an action thereafter to be brought in the state courts of South Dakota by the state itself to determine a claim made by it of title by escheat to property whose distribution by the legal representative of a decedent's estate was sought in the federal court action by persons claiming to be the heirs of the decedent. The Judge's order was prompted by the state's request for leave to intervene in the suit for distribution and therein to present its claim of escheat, which request Judge Carland denied, at the same time ordering the stay. The alleged heirs, having sought unsuccessfully in the Eighth Circuit Court of Appeals, a writ of mandamus directed to Judge Carland requiring him to vacate his stay order and to try and determine the case, proceeded by certiorari to the Supreme Court, which reversed the order of the Circuit Court of Appeals and, in remanding the action, directed that an alternative writ issue allowing and directing Judge Carland to show cause why a final writ should not issue. Limiting itself to the record before it, the Supreme Court observed in its opinion:

"In the present case, so far as the record before the circuit court of appeals discloses, the circuit court of the United States had acquired jurisdiction, the issues were made up, and when the state intervened, the Federal court practically turned the case over for determination to the state court. We think it had no authority to do this. * * * "

Lending support to that statement and to McClellan v. Carland, supra, generally are

Barber Asphalt Paving Co. v. Morris, Judge, 8 Cir., 132 F. 945, 67 L.R.A. 761 (the discussion of Judge Walter Sanborn only, since the issue involved was merely the validity of a claim for a money judgment); City of Detroit v. Detroit City R. Co., C.C.D.Mich., 55 F. 569; Sharon v. Hill, C.C.D.Cal., 26 F. 337; Great North Woods Club v. Raymond, District Judge, 6 Cir., 54 F.2d 1017; City of Livingston v. Monidah Trust, 9 Cir., 261 F. 966; In re Lasserot, 9 Cir., 240 F. 325; and In re President and Fellows of Harvard College, 1 Cir., 149 F.2d 69.

In what it actually decided, as also in the general tenor of its discussion, McClellan v. Carland, supra, is still recognized as soundly reasoned, Meredith v. Winter Haven, supra. But it has undergone repeated and valid distinction; and there are significant limiting observations in its own language.

Not entirely without pertinence in the present context, the Supreme Court observed in McClellan v. Carland, 217 U.S. 268, at pages 282, 283, 30 S.Ct. 501, at page 505, 54 L.Ed. 762:

"We have thus far considered the case upon the record made in the circuit court of appeals, and certified here upon the writ of certiorari. In this court the honorable judge of the district court entered special appearance, and filed an affidavit as to the proceedings before him, in which much appears which is not in the record presented to the circuit court of appeals. In that appearance and affidavit the petition in intervention, filed in the circuit court of the United States, is set forth in full, as well as certain affidavits which were filed. We shall not enter upon a consideration of these papers, because they are not in the record, as the same has been certified to us from the circuit court of appeals as the one upon which it acted, and declined to issue the writ of mandamus. They set forth at length certain proceedings in the state courts of South Dakota, in which it is alleged that the issue of the right of the complainants in the equity suit to take the estate of John C. McClellan, as his heirs at law, was determined adversely to them, and that such proceedings were had as showed that further proceedings in reference to the escheat of the estate of McClellan for want of legal heirs ought to be determined by proceedings in the state court. In making his appearance in this court, and in presenting these papers, it is evident that the district judge was much influenced in ordering the stay of proceedings, and withholding judgment until the state court had rendered its judgment, by the proceedings already had in the state courts of South Dakota."

And it will be remembered that the Supreme Court's mandate merely required the issuance of an alternative writ, which enabled the respondent judge of the trial court to disclose the full history of the situation before him.

In Commonwealth of Massachusetts v. Missouri, 308 U.S. 1, 19, 60 S.Ct. 39, 43, 84 L.Ed. 3, the Supreme Court declared:

"We have observed that the broad statement that a court having jurisdiction must exercise it (see Cohens v. Virginia, 6 Wheat. 264, 404, 5 L.Ed. 257) is not universally true but has been qualified in certain cases where the federal courts may, in their discretion, properly withhold the exercise of the jurisdiction conferred upon them where there is no want of another suitable forum. Canada Malting Co. v. Paterson Steamships, 285 U.S. 413, 422, 52 S.Ct. 413, 415, 76 L.Ed. 837; Rogers v. Guaranty Trust Co., 288 U.S. 123, 130, 131, 53 S.Ct. 295, 297, 298, 77 L.Ed. 652, 89 A.L.R. 720. Grounds for justifying such a qualification have been found in 'considerations of convenience, efficiency and justice.'"

In American Brake Shoe & F. Co. v. Interborough Rapid Transit Co., D.C.N.Y., 10 F.Supp. 512, 520, Circuit Judge Mack, concluding a comprehensive review of the question presented in the Carland case, said:

"In McClellan v. Carland and the cases in accord with it, no showing was made that the state courts were peculiarly fitted to decide the questions involved. Nothing in the situation called for an exercise of the federal court's discretion, and the stay of proceedings, therefore, could be regarded only as an unwarranted abdication of jurisdiction."

See also, Gilchrist v. Interborough Rapid Transit Co., 279 U.S. 159, 49 S.Ct. 282, 73 L.Ed. 652; Langnes v. Green, 282 U.S. 531, 51 S.Ct. 243, 75 L.Ed. 520; Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150; and Healey v. R. J. Reynolds Tobacco Company, D.C.N.C., 48 F.Supp. 207.

But controlling attention must be accorded to a number of modern opinions of the Supreme Court which admonish trial courts to a rational restraint in the exercise of their jurisdiction in controversies of the present sort. In Landis v. North American Co., 299 U.S. 248, 57 S.Ct. 163, 166, 81 L.Ed. 153, Mr. Justice Cardozo reasoned thus:

"* * * the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance. Kansas City Southern Ry. v. United States, 282 U.S. 760, 763, 51 S.Ct. 304, 305, 306, 75 L.Ed. 684; Enelow v. New York Life Ins. Co., 293 U.S. 379, 382, 55 S.Ct. 310, 311, 79 L.Ed. 440. True, the supplicant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both. Considerations such as these, however, are counsels of moderation rather than limitations upon power. There are indeed opinions, though none of them in this court, that give color to a stricter rule. Impressed with the likelihood or danger of abuse, some courts have stated broadly that, irrespective of particular conditions, there is no power by a stay to compel an unwilling litigant to wait upon the outcome of a controversy to which he is a stranger. Dolbeer v. Stout, 139 N.Y. 486, 489, 34 N.E. 1102; Rosenberg v. Slotchin, 181 App.Div. 137, 138, 168 N.Y.S. 101; cf. Wadleigh v. Veazie, Fed.Cas. No. 17,031; Checker Cab Mfg. Co. v. Checker Taxi Co., D.C., 26 F. 2d 752; Jefferson Standard Life Ins. Co. v. Keeton, 4 Cir., 292 F. 53. Such a formula, as we view it, is too mechanical and narrow. Kansas City Southern R. Co. v. United States, supra; Friedman v. Harrington, C.C., 56 F. 860; Amos v. Chadwick, L.R. 9 Ch.Div. 459; L.R. 4 Ch.Div. 869, 872. All the cases advancing it could have been adequately disposed of on the ground that discretion was abused by a stay of indefinite duration in the absence of a pressing need. If they stand for more than this, we are unwilling to accept them. Occasions may arise when it would be 'a scandal to the administration of justice' in the phrase of Jessel, M.R. (Amos v. Chadwick, L.R. 9 Ch.Div. 459, 462), if power to coordinate the business of the court efficiently and sensibly were lacking altogether."

Similarly, in Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 60 S.Ct. 628, 630, 84 L.Ed. 876, the court concluded its discussion and announced its ruling in this manner:

"A court of bankruptcy has an exclusive and nondelegable control over the administration of an estate in its possession. But the proper exercise of that control may, where the interests of the estate and the parties will best be served, lead the bankruptcy court to consent to submission to State courts of particular controversies involving unsettled questions of State property law and arising in the course of bankruptcy administration. And, under the circumstances of this case, we conclude that it is desirable to have the litigation proceed in the State courts of Illinois. An order to the trustee to proceed in the Illinois courts for a decision on the ownership of the fee to the right of way lands will be comparable to one in which the bankruptcy court, preserving the status quo the while, orders a trustee to determine in a plenary State court suit the legal right to property alleged by the trustee to have been fraudulently transferred by the bankrupt. Decision with which the federal court of bankruptcy is here faced calls for interpretation of instruments of conveyance in accordance with Illinois law. Neither statutes nor decisions of Illinois have been pointed to which are clearly applicable.

And the difficulties of determining just what should be the decision under the law of that State are persuasively indicated by the different results reached by the two Circuit Courts of Appeal that have attempted the determination. Unless the matter is referred to the State courts, upon subsequent decision by the Supreme Court of Illinois it may appear that rights in local property of parties to this proceeding have—by the accident of federal jurisdiction—been determined contrary to the law of the State which in such matters is supreme.

"The judgment of the Circuit Court of Appeals is reversed and that of the District Court is affirmed, except insofar as it provides for adjudication of the disputed ownership in the bankruptcy court. The cause is remanded to the District Court with instructions to modify its order so as to provide appropriate submission of the question of fee-simple ownership of the right of way to the Illinois State courts."

And, there, the court was directing a court of bankruptcy, which it had already held to be vested with ample jurisdiction for decision, to forbear in the establishment of the ownership of oil beneath railroad lands *until determination of the issue might be made by the state courts of Illinois in an action to be instituted thereafter.* See also Beal v. Missouri Pacific Railroad Corp., 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577; Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971; Watson v. Buck, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; City of Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; Brillhart v. Excess Insurance Co., 316 U.S. 491, 62 S. Ct. 1173, 86 L.Ed. 1620; Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424; Meredith v. Winter Haven, supra [320 U.S. 228, 64 S.Ct. 12], (in which, while holding that the case disclosed no background for forbearance, the court gathers and analyzes the cases counselling forbearance and says, inter alia: "It is the court's duty to do so (i.e. grant a stay) when a suit is pending in the state courts, where the state questions can be conveniently and authoritatively answered, at least where the parties to the federal court action are not strangers to the state action"); Spector Motor Service, Inc., v. McLaughlin, 323 U.S. 101, 65 S.Ct. 152, 89 L.Ed. 101; American Federation of Labor v. Watson, D.C., 60 F.Supp. 1010.

Peculiarly suggestive is the following excerpt from City of Chicago v. Fieldcrest Dairies, supra, 316 U.S. at pages 171, 172, 62 S.Ct. at page 988, 86 L.Ed. 1355:

"We are of the opinion that the procedure which we followed in the Pullman case should be followed here. Illinois has the final say as to the meaning of the ordinance in question. It also has the final word on the alleged conflict between the ordinance and the state Act. The determination which the District Court, the Circuit Court of Appeals, or we, might make could not be anything more than a forecast—a prediction as to the utlimate decision of the Supreme Court of Illinois. Here as in the Pullman case 'a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication.' 312 U.S. at page 500, 61 S.Ct. at page 645, 85 L.Ed. 971. Furthermore, the dispute in its broad reach involves a question as to whether a city has trespassed on the domain of a State. Though that issue was not in the case when the complaint was filed, it emerged, due to the passage of the Milk Pasteurization Plant Law [Ill.Rev. Stat.1941, c. 56½, § 115 et seq.], long before the District Court entered its decree. The delicacy of that issue and an appropriate regard 'for the rightful independence of state governments' (Beal v. Missouri Pacific R. Co., 312 U.S. 45, 50, 61 S.Ct. 418, 421, 85 L.Ed. 577) reemphasize that it is a wise and permissible policy for the federal chancellor to stay his hand in absence of an authoritative and controlling determination by the state tribunals. As we said in the Pullman case, 'The resources of equity are equal to an adjustment that will avoid the waste of a tentative decision' and any 'needless friction with state policies.' See page 500 of 312 U.S., page 645 of 61 S.Ct., 85 L.Ed. 971, and cases cited; Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 483, 484, 60 S.Ct. 628, 630, 631, 84 L.Ed. 876. It is an exercise of a 'sound discretion, which

guides the determination of courts of equity.' Beal v. Missouri Pacific R. Co., supra, 312 U.S. at page 50, 61 S.Ct. at page 421, 85 L.Ed. 577. In this case that discretion calls for a remission of the parties to the state courts which alone can give a definitive answer to the major questions posed. *Plainly they constitute the more appropriate forum for the trial of those issues.* See 54 Harv.L.Rev. 1379. Considerations of delay, inconvenience, and cost to the parties, which have been urged upon us, do not call for a different result. For we are here concerned with the much larger issue as to the appropriate relationship between federal and state authorities functioning as a harmonious whole." (Emphasis added.)

The foregoing pattern of action is equally approved in the appellate and district courts. Green v. Phillips Petroleum Co., 8 Cir., 119 F.2d 466; In re Central Railroad of New Jersey, 3 Cir., 136 F.2d 633; Findley v. Odland, 6 Cir., 127 F.2d 948; United States v. 150.29 Acres, 7 Cir., 135 F.2d 878; United States v. Napoleon, 5 Cir., 296 F. 811; and Greer v. Scearce, D.C.Mo., 53 F. Supp. 807.

Analysis of the foregoing authorities upon the question of forbearance to exercise a valid jurisdiction pending the determination of an issue of local law by an appropriate state court leads to the conclusion that emphasis is placed upon the peculiar aptitude of the state court in the circumstances of each case for determination of the particular issue. It has not been regarded as controlling, or even important, whether the institution of the state court action antedated the commencement of the federal court suit, or even whether there was an actually pending state court case. For in several of the cited instances the ruling involved the prospective making up of issues in the state courts.

In passing, it is observed that the mere difficulty of arriving at a conclusion respecting the material state law is not alone a valid excuse for the federal court's failure to ascertain it or a warrant for a stay. Meredith v. Winter Haven, supra; Yoder v. Nu-Enamel Corp., 8 Cir., 117 F.2d 488. At the same time the federal courts are warned to refrain from "preliminary guesses regarding local law," Spector Motor Service, Inc., v. McLaughlin, supra, 323 U.S. at page 105, 65 S.Ct. at page 154, 89 L.Ed. 101, in which it is said: "Avoidance of such guesswork by holding the litigation in the federal courts until definite determinations on local law are made by the state courts, merely heeds the time-honored canon of constitutional adjudication."

Which brings the court back to the present case, and to the impact upon it of the domestic law of Nebraska. While this action is brought directly and entirely for the quieting of title to Nebraska real estate, the sole matter to be litigated and determined is the alleged nullity under the cited statute of Nebraska of the decrees entered in the foreclosure case in the District Court of Seward County, Nebraska. Briefly and only in part, the history of that case, as revealed in pleadings and stipulations before this court, discloses that the plaintiff here brought it as mortgagee ultimately against John F. Zimmerer and Robert T. Cattle, among others; that Cattle, though ostensibly the owner of the legal title to the land while the case was pending, was really an inferior lienholder, and Zimmerer the real owner of the equity of redemption; that there was no disabling relationship of the trial judge to the plaintiff or to Zimmerer, whose equity was foreclosed; that throughout the pendency of the case Zimmerer was, and long theretofore had been, acquainted with the judge and Cattle and aware of their relationship by marriage; that after the entry of the decree of foreclosure, and to prevent sale thereunder on the lapse of the statutory stay, Zimmerer formally sought and obtained a moratory stay under the then operative delaying statute of Nebraska which expressly predicated a defendant landowner's right to relief upon the previous entry of a foreclosure decree; and that he ultimately consented in open court to the confirmation of the sheriff's sale which, if valid, finally barred both him as owner of the equity, and Cattle as inferior lienholder, of any interest in or lien upon the premises. If, in the light of that history, those decrees are void, the plaintiff's prayer must be denied. If they are valid

500

the relief he seeks must be granted. The validity or nullity of the decrees is what must control; and that is entirely a question of Nebraska law.

The quoted portion of Section 24-315, R.S.Neb.1943, was considered in Walters v. Wiley, 1 Neb. Unof. 235, 95 N.W. 486. Another phase of the section, involving the disqualification of a judge in a case in which he has been an attorney, was examined in Harrington v. Hayes County, 81 Neb. 231, 115 N.W. 733, 129 Am.St.Rep. 680. In both instances the conclusion was that the language of the statute necessitated a finding of nullity in respect of a judgment offending against it. But, unfortunately, both of those opinions were rendered by Supreme Court Commissions rather than by the Supreme Court; and their controlling authority as precedent in Nebraska's judicial system is open to serious question, if indeed, it may not be altogether denied. That is said in full recognition of their significance in this court as an indication of the law of the state. Yoder v. Nu-Enamel Corp., supra. Also vide infra.

But what the plaintiff urges is the speculation by this court upon the applicable local law of Nebraska and specifically upon the validity of a judgment of one of Nebraska's courts when an action is now pending in the very court which rendered that judgment in which both the validity of the judgment is directly challenged and may be determined with finality, as between the parties to this controversy and also and more generally, if the case be reviewed on appeal, the state of the law of Nebraska may be clarified and decided. The plaintiff urges this court to quiet its title upon the premise that the decrees in its foreclosure case are valid and unimpeachable, at a time when an appropriate and direct proceeding is pending in which the Nebraska courts may conceivably pronounce them null and void. The plaintiff's argument that such a judgment by this court would be res adjudicata and final between the parties does not sustain the course to which it invites the court. On the contrary, it suggests a becoming caution and restraint in the premises.

It appears to this court that the present is a peculiarly appropriate occasion for forbearance in the exercise of jurisdiction by a federal court, while a state court determines an issue which it is preeminently competent to decide. The controversy is not about mere contracts or torts of the litigants. It concerns the · validity of a judgment, or a series of judgments in a single case, of a Nebraska court. Where better (or equally well) may that issue be resolved than in the court which rendered the challenged decrees, and in the Supreme Court of Nebraska by which alone the legal question may be determined with final authority?

 In Nebraska, a judgment which is absolutely void may be collaterally attacked. Drainage District No. 1 v. Village of Hershey, 139 Neb. 205, 296 N.W. 879. However, it may also be directly challenged, but only in the court by which it was rendered. Smithson v. Smithson, 37 Neb. 535, 56 N.W. 300, 40 Am.St.Rep. 504; Rasmussen v. Rasmussen, 131 Neb. 724, 269 N.W. 818; State v. Westover, 107 Neb. 593, 186 N.W. 998. Such direct challenge may, at the option of the aggrieved party, be made either through a separate suit in equity, Kaufmann v. Drexel, 56 Neb. 229, 76 N.W. 559; Hard v. Hard, 51 Neb. 412, 70 N.W. 1122; Abbott v. Johnston, 93 Neb. 726, 141 N.W. 821; Pavlik v. Burns, 134 Neb. 175, 278 N.W. 149; Smithson v. Smithson, supra; or by a simple motion in the original case, Baldwin v. Burt, 54 Neb. 287, 74 N.W. 594; Howard Stove & Furnace Co. v. Rudolf, 128 Neb. 665, 260 N.W. 189; Foster v. Foster, 111 Neb. 414, 196 N.W. 702; Hayes County v. Wileman, 82 Neb. 669, 118 N.W. 478; and that quite irrespective of the expiration of the term at which the challenged judgment was entered, or of the statute, R.S.Neb.1943, § 25-2001 et seq., limiting the time after entry within which judgments may be attacked after term for certain designated errors or specifications of invalidity.

That permissible flexibility of procedure in seeking an adjudication of the nullity of a judgment of a Nebraska court justifies the mention of Barrow v. Hunton, 99 U.S. 80, 25 L.Ed. 407. In that case the Su-

preme Court denied the right to remove to the federal court an action brought in a Louisiana state court by a judgment debtor to procure, chiefly for want of any service on the judgment debtor, but also for other reasons, a decree of nullity in respect of a judgment theretofore obtained against him in the latter court. Removal was sought by the judgment creditor, a citizen of Missouri, who had obtained the original judgment in the Louisiana state court. The denial of removability was premised upon the conclusion of the Supreme Court of the United States that, the assigned grounds of invalidity being, under the code of Louisiana, "vices of form," the suit to nullify the judgment "was substantially a continuation of the original suit." The Louisiana statute defining and enumerating the so-called "vices of form" is quoted in part; and it includes among other such "vices," "where the judge was incompetent to try the suit." Now, this court is fully aware that the Nebraska Supreme Court has stated that a proceeding in equity to vacate a void judgment is an independent action. But, without placing the instant ruling upon this ground, it may nevertheless be inquired, without deciding, whether it is not "substantially a continuation of the original suit," within the thought of Barrow v. Hunton, supra. Some force is lent to that possibility by two reflections: First, that in the vacation of a void Nebraska decree, what may be accomplished by independent suit may be secured with equal force by motion in the original action; and secondly, that, once the judgment of nullity is secured, the original suit remains pending and may thereafter be prosecuted to final effect within its original contemplation in like manner as if the void judgment had never been entered. And if the action to vacate be "substantially a continuation of" the basic foreclosure suit instituted more than thirteen years ago, then much of the force of the argument made here from priority of jurisdiction is dissipated.

■ Doubt may well be entertained whether the granting of the stay requested by the defendants, Joan Zimmerer and Helena Albers, can be considered as adverse, in practical operation, to the plaintiff which vigorously resists it. Under the rule of Yoder v. Nu-Enamel Corp., supra, in the absence of pronouncements by the Supreme Court of the state, this court is inflexibly bound to follow such indices of the applicable law of Nebraska as are available to it, and, obviously, they include Walter v. Wiley, supra, and Harrington v. Hayes County, supra. To the extent that they may be regarded as reflecting the law of Nebraska, this court must accept and apply them. It is powerless to disregard, much less to nullify, them if they be regarded by this court as mistakenly reasoned. The courts of Nebraska, especially its Supreme Court, are not thus circumscribed. The latter court may act as its present judgment upon the law dictates.

It would be difficult to conceive a more striking example of that distinction in power between the state and federal courts in the application of the local law than Yoder v. Nu-Enamel Corp., supra, itself. It necessarily followed certain earlier opinions of the Supreme Court of Nebraska; and, doing so, denied the validity of process upon a non-resident corporate defendant in an action originally instituted in the state court of Nebraska and removed to this court on the ground of diversity of citizenship. But counsel for the plaintiff Yoder, persuaded of error in the Nebraska court's former rulings, detected in the controversy between the same parties a separate aspect involving less than three thousand dollars; and, upon it, instituted in the state court a new suit against the non-resident corporation that could not be removed, in which he ultimately procured from the Nebraska Supreme Court a direct reversal of its previous attitude, involving the overruling of the earlier cases. See Yoder v. Nu-Enamel Corporation, 140 Neb. 585, 300 N.W. 840. Only thereafter, was he enabled to fasten upon the defendant the decisive jurisdiction of Nebraska process enforceable even upon removal to this court. Yoder v. Nu-Enamel Corporation, 8 Cir., 145 F.2d 420.

■ The court, in the present controversy, is convinced that well reasoned discretion directs that its further action be stayed pending ruling in the case brought and now pending in the District Court of

Seward County, Nebraska. But, in harmony with the thought of Landis v. North American Co., supra, the stay now allowed will not extend beyond the deliverance of the state trial court. If any of the parties shall thereafter desire further forbearance pending an appeal, claim therefor may be addressed to the court in due season. And reservation will also be made of the right to vacate the stay even before its presently contemplated termination, upon appropriate application and showing. Without further comment in that direction, it will be sufficient to observe that such reservation will enable this court to move decisively if the defendants, Joan Zimmerer and Helena Albers, shall allow their pending state court suit to lie unprosecuted on the state court's docket. No delay from that source will be tolerated.