## COVELL v. HEYMAN.

IN ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

Argued March 17th, 1884.—Decided March 31st, 1884.

*Conflict of Law.*

The possession by a marshal of a court of the United States of property by virtue of a levy under a writ of execution issued upon a judgment recovered in a Circuit Court of the United States is a complete defence to an action in a State court of replevin of the property seized, without regard to its rightful ownership. *Freeman* v. *Howe*, 24 How. 450, affirmed and applied to the facts in this case. *Krippendorf* v. *Hyde*, 110 U. S. 276, affirmed. *Buck* v. *Colbath*, 3 Wall. 334, distinguished.

The principle that whenever property has been seized by an officer of the court by virtue of its process, the property is to be considered as in the custody of the court and under its control for the time being, applies both to a taking under a writ of attachment on mesne process and to a taking under a writ of execution.

The defendant in error was the plaintiff in the State court, and brought her action of replevin for the recovery of specific personal property, to which she claimed title, and which she alleged was wrongfully detained from her by the plaintiff in error. The defendant below was deputy marshal of the United States, and, as such, had possession of the property replevied by virtue of an execution issued upon a judgment of the Circuit Court of the United States for the Western District of Michigan against Adolph Heyman, having taken the same, by virtue of a levy under said execution, as the property of the judgment debtor. Judgment was rendered in the Supreme Court of the State for the plaintiff below, upon a finding in favor of her title to the' property, reversing a judgment for the defendant below in the Circuit Court for the county of Kent. To reverse that judgment this writ of error was prosecuted.

*Mr. Roger W. Butterfield* for plaintiff in error.

*Mr. Lyman D. Norris* for defendant in error submitted on his brief.

MR. JUSTICE MATTHEWS delivered the opinion of the court. He stated the facts in the foregoing language and continued:

The sole question presented for our decision is whether it was error in the State court to permit a recovery of the possession of property, thus held, against a marshal of the United States or his deputy, in behalf of the rightful owner; and whether, on the other hand, it should not have adjudged in favor of the defendant below, that his possession of the property by virtue of the levy under the writ was, in itself, a complete defence to the action of replevin, without regard to the rightful ownership.

The case of *Freeman* v. *Howe,* 24 How. 450, was precisely like the present in its circumstances, except that there the process under which the marshal had seized and held the property replevied, was an attachment according to the State practice in Massachusetts, being mesne process, directed, however, not against property specifically described, but commanding a levy, as in cases of *fi. fa.,* upon the property of the defendant. Whether that difference is material is, perhaps, the only question to be considered, for the doctrine of that decision is too firmly established in this court to be longer open to question. The proper answer to it will be found by an examination of the principles on which the judgment in that case proceeded, and of those cases which preceded, and of others, which have followed it.

In the opinion in that case, Mr. Justice Nelson refers to the case of *Taylor* v. *Carryl,* 20 How. 583, as a conclusive and sufficient authority on the point. He said: "The main point there decided was, that the property seized by the sheriff, under the process of attachment from the State court, and while in the custody of the officer, could not be seized or taken from him by a process from the District Court of the United States, and that the attempt to seize it by the marshal, by a notice or otherwise, was a nullity, and gave the court no jurisdiction over it, inasmuch as to give jurisdiction to the District Court in a proceeding *in rem,* there must be a valid seizure and an actual control of the *res* under the process." And referring to the grounds of the dissent in that case, he continues: "The majority of the court was of opinion that according to the

course of decision in the case of conflicting authorities under a State and federal process, and in order to avoid unseemly collision between them, the question as to which authority should for the time prevail, did not depend upon the rights of the respective parties to the property seized, whether the one was paramount to the other, but upon the question which jurisdiction had first attached by the seizure and custody of the property under its process."

The opinion then proceeds to show that no distinction can be made, affecting the question, between process *in rem*, and an attachment issued by a common-law court, although the latter is not the foundation of the jurisdiction, and the property seized is not the subject matter of the suit, which is simply for the recovery of a debt, without a lien or charge upon the property, except that resulting from its seizure, as security for the judgment. The objection that the process was directed against the property of the defendant and conferred no authority upon the marshal to take the property of the plaintiffs in the replevin suit, is then answered, the court saying—"for the property having been seized under the process of attachment, and in the custody of the marshal, and the right to hold it being a question belonging to the Federal court, under whose process it was seized, to determine, there was no authority, as we have seen, under the process of the State court to interfere with it."

The opinion of the court then points out the error of Chancellor Kent, in his statement, 1 Kent, 410, that, "if a marshal of the United States, under an execution in favor of the United States against A, should seize the person or property of B, then the State courts have jurisdiction to protect the person and the property so illegally invaded." Commenting on this statement, it is said, that the effect of the principle, if admitted, would be to draw into the State courts, "not only all questions of the liability of property seized upon mesne and final process issued under the authority of the Federal courts, including the admiralty, for this court can be no exception, for the purposes for which it was seized, but also the arrests upon mesne and imprisonment upon final process of the person in

both civil and criminal cases, for in every case the question of jurisdiction could be made;" and the court adds: "We need scarcely remark, that no government could maintain the administration or execution of its laws, civil or criminal, if the jurisdiction of its judicial tribunals were subject to the determination of another."

To meet the objection, that the party whose property had been wrongfully taken and withheld would be left without remedy, unless by virtue of citizenship he could sue in a Federal court, the opinion then explains the remedy in such cases, by an ancillary proceeding in the court whose process has been made the instrument of the wrong; a remedy the principle and procedure of which we had occasion recently in the case of *Krippendorf* v. *Hyde*, 110 U. S. 276, to restate and reaffirm.

The point of the decision in *Freeman* v. *Howe, supra,* is that, when property is taken and held under process, mesne or final, of a court of the United States, it is in the custody of the law, and within the exclusive jurisdiction of the court from which the process has issued, for the purposes of the writ; that the possession of the officer cannot be disturbed by process from any State court, because to disturb that possession would be to invade the jurisdiction of the court by whose command it is held, and to violate the law which that jurisdiction is appointed to administer; that any person, not a party to the suit or judgment, whose property has been wrongfully, but under color of process, taken and withheld, may prosecute, by ancillary proceedings, in the court whence the process issued, his remedy for restitution of the property or its proceeds, while remaining in the control of that court; but that all other remedies to which he may be entitled, against officers or parties, not involving the withdrawal of the property or its proceeds, from the custody of the officer and the jurisdiction of the court, he may pursue in any tribunal, State or federal, having jurisdiction over the parties and the subject matter. And *vice versa*, the same principle protects the possession of property while thus held, by process issuing from State courts, against any disturbance under process of the courts of the United States; excepting, of course, those cases wherein the latter exercise jurisdiction for the pur-

pose of enforcing the supremacy of the Constitution and laws of the United States.

The doctrine of *Freeman* v. *Howe, supra,* was further defined by the decision in *Buck* v. *Colbath,* 3 Wall. 334, which checked and corrected an attempted misapplication of its principle, which, if permitted, would cover actions against the officer for trespasses, not involving any interference with the property itself while in his possession. It was there satisfactorily shown that the officer was protected against such an action, only in that class of cases where he could justify under process or order of a court directing expressly the very act alleged to be wrongful; and not in that other class, where the writ or order, such as a writ of attachment or other mesne process, and the final process of execution upon a judgment, commands the seizure of property described not specifically, but only generally, as the property of the party named in the writ. In the latter, the officer acts at his peril, and is responsible in damages to the party injured for the consequences of any error or mistake in the exercise of his discretion in the attempt to enforce the writ. In the former, as he has no discretion, it is the court itself which acts, and the officer is protected in his obedience to its command. Of this class, the case of *Connor* v. *Long,* 104 U. S. 228, was an example; that of *Buck* v. *Colbath, supra,* fell within the latter. And in distinguishing that case from *Freeman* v. *Howe, supra,* Mr. Justice Miller stated the principle of the latter decision—" a principle," he said, " which is essential to the dignity and just authority of every court, 'and to the comity which should regulate the relations between all courts of concurrent jurisdiction;" " that principle is," he continued, " that whenever property has been seized by an officer of the court, by virtue of its process, the property is to be considered as in the custody of the court, and under its control for the time being; and that no other court has a right to interfere with that possession, unless it be some court which may have a direct supervisory control over the court whose process has first taken possession, or some superior jurisdiction in the premises."

Here it will be perceived that no distinction is made between

writs of attachment and executions upon judgments, and that the principle embraces both, as indeed both are mentioned as belonging to the same class elsewhere in the opinion.

And there is nothing in the nature, office, or command of the two descriptions of process, by which, so far as the question here involved is concerned, they can be distinguished. One is mesne process and the other final; but in the courts of the United States the attachment cannot be used, as in the practice of other jurisdictions, as means of compelling the appearance of the defendant, or of founding jurisdiction as a proceeding *in rem.* Both alike command the seizure of the property of the defendant without a specific description, and in obeying the precept, the officer exercises precisely the same discretion, and with the same consequences, if he commits a wrong under color of it. The court has the same control over both forms of its process, and has custody of the property seized by virtue of them in the same sense. The circumstance that, as to property held under an attachment, the final judgment may direct its sale, while the execution is issued upon præcipe of the party, and is executed without further order, cannot alter the relation of the court, either to the officer or the property. It has jurisdiction over the latter to meet and satisfy the exigency of either writ, and that jurisdiction can be maintained only by retaining the possession acquired by the officer in executing it. A third person, a stranger to the suit and claiming as owner, may prosecute his right to restitution in either case, in the same methods as pointed out in *Krippendorf* v. *Hyde*, 110 U. S. 276, or he may pursue his remedy for damages against the officer, either personally for the trespass, as in *Buck* v. *Colbath, supra*, or for the breach of his official duty, upon his bond and against his sureties, as in the case of *Lammon et al.* v. *Feusier et al., ante*, page 17.

The very point was involved in the decision in *Hagan* v. *Lucas*, 10 Pet. 400, where it was expressly held that property held by a sheriff under an execution from a State court could not be taken in execution by a marshal of the United States by virtue of final process upon a judgment in a Federal court. Mr. Justice McLean, delivering the opinion of the court, said:

" Had the property remained in the possession of the sheriff under the first levy, it is clear the marshal could not have taken it in execution, for the property could not be subject to two jurisdictions at the same time. The first levy, whether it were made under the Federal or State authority, withdraws the property from the reach of the process of the other." " A most injurious conflict of jurisdiction would be likely often to arise between the Federal and State courts, if the final process of the one could be levied on property which had been taken by the process of the other. The marshal or the sheriff, as the case may be, by a levy, acquires a special property in the goods, and may maintain an action for them. But if the same goods may be taken in execution at the same time by the marshal and the sheriff, does this special property vest in the one, or the other, or both of them? No such case can exist; property once levied on remains in the custody of the law, and it is not liable to be taken by another execution in the hands of a different officer; and especially by an officer acting under a different jurisdiction."

That which cannot be done by final process, is equally out of the reach of original or mesne process.

The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between State courts and those of the United States, it is something more. It is a principle of right and of law, and therefore of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void. The

regulation of process, and the decision of questions relating to it, are part of the jurisdiction of the court from which it issues. "The jurisdiction of a court," said Chief Justice Marshall, "is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied. Many questions arise on the process, subsequent to the judgment, in which jurisdiction is to be exercised." *Wayman* v. *Southard*, 10 Wheat. 1.

The principle which defines the boundaries of jurisdiction between the judicial tribunals of the States and of the United States, the application of which effectually prevents their confusion, was set forth and vindicated in the judgment of this court in *Ableman* v. *Booth*, 21 How. 506. It was there said by Chief Justice Taney, p. 516, that "the sphere of action appropriated to the United States is as far beyond the reach of the judicial process issued by a State judge or a State court as if the line of division was traced by landmarks and monuments visible to the eye." And speaking of the procedure in cases of *habeas corpus*, issued under State authority, and admitting the duty of the officer of the United States, holding the prisoner under its process, to return the fact and show his warrant, the Chief Justice continues: "But after the return is made and the State judge or court judicially apprized that the party is in custody under the authority of the United States, they can proceed no further. They then know that the prisoner is within the dominion and jurisdiction of another government, and that neither the writ of *habeas corpus* nor any other process issued under State authority can pass over the line of division between the two sovereignties. He is then within the dominion and exclusive jurisdiction of the United States. If he has committed an offence against their laws, their tribunals alone can punish him. If he is wrongfully imprisoned, their judicial tribunals can release him and afford him redress." . . . "No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued; and any attempt to enforce it beyond these boundaries is nothing less than lawless violence." And in *Tarble's Case*, 13 Wall. 397, commenting on this language of Chief Justice Taney in *Ableman* v. *Booth*,

*supra,* Mr. Justice Field points out, that it was not intended merely to meet cases where the authority of the United States was undisputed, but cases where its validity was questioned, and it appeared that the prisoner was held under claim and color of such authority, in good faith, and not by way of mere pretence and imposition. And the exclusive authority of the court issuing the writ extends, not only to the decisions of all questions affecting its jurisdiction, and the form and force of the writ itself, and the validity of the proceeding in issuing and executing it, but also of all questions affecting the identity of the person or property seized and held under color of its authority, and the right to exempt them from its operation. It does not avail therefore to say, that, as the writ commands the officer to take the property of the defendant, he cannot under that claim to take and hold the property of another; because the property which he does actually take, he takes and holds as the property of the defendant, claiming it to be such, and therefore he has it in his possession under color of process and claim of right.

In *Lammon et al.* v. *Feusier et al.* already cited, it was said by Mr. Justice Gray, in reference to the case of a common-law attachment, that "the taking of the attachable property of the person named in the writ is rightful, the taking of the property of another person is wrongful; but each, being done by the marshal in executing the writ in his hands, is an attempt to perform his official duty and is an official act." The same is true of a similar levy under an execution, as we have shown that there is no difference, relevant to the point, between the two writs.

Property thus levied on by attachment, or taken in execution, is brought by the writ within the scope of the jurisdiction of the court whose process it is, and as long as it remains in the possession of the officer it is in the custody of the law. It is the bare fact of that possession under claim and color of that authority, without respect to the ultimate right, to be asserted otherwise and elsewhere, as already sufficiently explained, that furnishes to the officer complete immunity from the process of every other jurisdiction that attempts to dispossess him. That

was the defence made and relied on by the plaintiff in error in the present case, and to which the Supreme Court of Michigan refused to give its due and conclusive effect. For that error its judgment is reversed, and the cause is remanded with directions to affirm the judgment of the Circuit Court for the County of Kent, in favor of the plaintiff in error; and

*It is so ordered.*