## THE E. L. CAIN.

KRESSEL *v.* THE E. L. CAIN. CONROY *et al. v.* SAME. CHARLESTON IRON-WORKS *v.* SAME. BENKE *et al. v.* SAME. STEEDMAN *v.* SAME.

(*District Court, D. South Carolina.* March 5, 1891.)

1. COURTS—STATE AND FEDERAL—CONCURRENT JURISDICTION—COMITY.
   A tug attached on process out of a state court, and by that court placed in the hands of its receiver, to whom it is delivered by the sheriff, is in the custody of that court, and cannot be taken by a United States marshal at the instance of the attaching creditors suing in the district federal court, though the receiver makes no resistance to such taking, nor demands the tug from the marshal.
2. SAME—PROCEEDINGS IN REM—ATTACHMENT.
   The fact that the title of defendant in attachment to the tug is disputed does not affect the state court's jurisdiction, nor the fact that the proceeding in the state court is on attachment, while that in the federal court is *in rem.*
3. SAME—MARITIME LIENS—ENFORCEMENT.
   The liens set up in the federal court being maritime liens, which cannot be adjudicated in the state court, the causes will be retained until the state court orders the sale of the tug or releases it from custody in any other mode.

In Admiralty. Libel for seamen's wages and supplies. On exception to the jurisdiction.

*I. P. K. Bryan,* for libelants.

*Bradley & Barnard,* for claimants.

SIMONTON, J. In order to understand these cases, a statement of facts is necessary. On 3d November, 1890, a complaint was filed in the court of common pleas for Charleston county by F. C. Manvel against the North American Dredging & Improvement Company. The complaint alleged that the defendant was an insolvent corporation; that a receiver had been appointed for its property in the state of New Jersey, under whose laws it was created; and that an ancillary receiver had been appointed in New York. The prayer and object of the complaint are that a receiver be appointed in the state of South Carolina, to take charge of its property here, which property, it is stated, consists, among other things, of the dredge Frolic and the steam-tug E. L. Cain. On the same day attachments were issued in the same court by Frank Kressel, Jr., M. A. Connor, Conroy & Co., and the Charleston Iron-Works, and perhaps others, against the North American Dredging Company, and in each warrant the sheriff was instructed to attach all the property of the defendant in his county, especially the dredge Frolic, and all other property of whatsoever kind, in the hands, possession, or control of William H. Fox. Fox was the manager of this company in charge of the dredge and the tug Cain. To each of these warrants the sheriff had made his return of the personal property attached by him, and taken into his custody by virtue thereof, which return includes the dredge Frolic and the steam-tug Cain, the latter valued at $5,000. As soon as plaintiff was informed of these attachments, he filed a supplemental complaint, repeating the original complaint, and stating the fact of the attachments. To

this the above-named attaching creditors were made parties, and each answered. Upon the complaint, after appointing one Thompson as receiver, and then removing him, the court appointed Henry C. Cheves receiver. The order declared him receiver of all the property and assets of which Thompson had been receiver within the state of South Carolina, and the order appointing Thompson made him receiver of all the property and assets, real, personal, and mixed, of the defendant, the North American Dredging Company, situated within the state of South Carolina. Upon qualifying as receiver, H. C. Cheves demanded from the sheriff possession of all the property in his custody under the attachment warrants, and, after some demur because of fees due to him, the sheriff delivered into the receiver's possession the dredge Frolic and the tug E. L. Cain. The plaintiffs in attachment filed their complaints against the North American Dredging & Improvement Company in the court of common pleas. That of F. Kressel, Jr., is dated on 3d November, 1890. His claim is for supplies furnished to the defendant and the steam-tug E. L. Cain and dredge Frolic and Nicaragua, both upon the credit of said defendant, claiming to be owners of said vessels and operating the same, and also upon the credit of the said vessels. In his affidavit, upon which the warrant of attachment was issued, Kressel swears that the defendant has property within this county, consisting of the dredge Frolic and the tug E. L. Cain. The affidavit of Conroy & Co., in their attachment, alleges that their cause of action is for supplies, etc., to the steam-tug E. L. Cain, at the request of the superintendent of the said defendant, the North American Dredging & Improvement Company, and upon the credit both of said defendant, claiming to be the owners, and also of said vessels. The warrant of attachment in the *Case of the Charleston Iron-Works* specifically directs the attachment of the E. L. Cain. The sheriff surrendered the dredge and the tug to the receiver on 15th December, 1890. No formal receipt was asked for or given. But the receiver assumed responsibility for the dockage of the dredge and of the tug. He put no one specifically in charge, but left the crews aboard of each. On the 17th day of December the marshal of this court, under a warrant of arrest issued in the cases now at bar, seized the tug E. L. Cain. The deputy-marshal says that he found no one in charge of her. No resistance was made to the act of the marshal. No demand has been made upon him in behalf of the receiver. On the 10th January of this year, upon a report of the receiver setting forth the assets of the defendant company, and among them the tug E. L. Cain, mentioning that she was in the hands of the marshal, the court of common pleas ordered a sale of all the right, title, and interest of the company in that tug when the receiver has been fully advised of the nature and extent of that interest. Much testimony has been introduced tending to show that no charge was taken of this tug by the receiver, and that she really is not the property of the defendant in attachment; and that this fact is recognized by the plaintiffs in attachment as well as the receiver. This testimony, in the view I take of the case, is not relevant. The question is, is this tug in the hands of the state court? She certainly was attached by process

issuing out of that court, was in the hands of the sheriff under warrants, three of which incidentally included her, and one at least of which specifically directed the attachment of the tug as the property of the defendant corporation, and all of them issued on affidavits and complaints, stating that she was such property.    The sheriff turned the tug over to the receiver.    The receiver himself was appointed in proceedings in which the complaint specifically claimed the tug as the property for which a receiver is sought; and the orders of the court treat the tug as under its control.    The tug thus was in the custody of the law.    Beach, Rec. § 221; *Covell* v. *Heyman*, 111 U. S. 176, 4 Sup. Ct. Rep. 355.    No act of the receiver, no waiver of claim on his part, could change the *status* of the property, or affect the control of the court.    Even his refusal to accept the appointment or to act on the order, or his willful abandonment of his duty, would not work such change or affect such control.    Beach, Rec. *supra.*    The receiver derives his whole authority from the court, acts under its orders, has little or no discretion; none, indeed, not reviewable by and under the control of the court.    See *Thompson* v. *Insurance Co.*, 136 U. S. 287, 10 Sup. Ct. Rep. 1019.    As he took custody by order of the court, he can release from custody only by its order; and if the property, being in the custody of the law, is placed in his keeping, his laches, even his abuse of his authority, cannot take it out of such custody.    Wherever, within the territory of the court, the property is, it is in the custody of the law.    The presence of the officer is simply a form of notice of this.    His absence does not destroy this custody.    This being so, and this tug having been taken possession of by process of the state court, and by that court placed in the custody of its receiver, it cannot be held by any process out of this court until discharged by the order of the state court.    This rule is essential to the dignity and just authority of every court, and to the comity which should regulate the relations between all courts of concurrent jurisdiction.    MILLER, J., in *Buck* v. *Colbath*, 3 Wall. 334.    Indeed, as between the state courts and those of the United States, it is more than mere comity.    It is a principle of right and of law, and therefore of necessity.    It leaves nothing to discretion or mere convenience.    These courts do not belong to the same system, so far as their jurisdiction is concurrent.    Although they co-exist in the same space, they are independent, and have no common superior.    They exercise jurisdiction, it is true, within the same territory, but not in the same plane.    When one takes within its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other as if it had been carried physically into a different territorial sovereignty.    *Covell* v. *Heyman*, 111 U. S. 182, 4 Sup. Ct. Rep. 355.    Nor can it affect this question that the title of the defendant in attachment to the tug is disputed, nor, indeed, would it affect this question if the absence of title could be demonstrated.    That is a matter wholly for the court which has taken custody of the property.    No other court can decide this point for it.    Were it otherwise, the independence of courts would be destroyed.    *Lammon* v. *Feusier*, 111 U. S. 19, 4 Sup. Ct. Rep. 286; *Freeman* v. *Howe*, 24 How. 458.    Nor can it affect the

v.45F.no 5—24

question that the state court has taken custody under a warrant of attachment, and this court under its proceeding *in rem*. The property, the *res*, having been taken under process of attachment, it is in custody of the state court. The right to hold it is a question to be determined by the court under whose process it was seized. There is no authority in this court to interfere with it. *Taylor* v. *Carryl*, 20 How. 583, quoted and affirmed in *Covell* v. *Heyman*, 111 U. S. 177, 4 Sup. Ct. Rep. 355. So, for the present, this court can proceed no further. But the liens set up in this court are maritime liens, which cannot be adjudicated or passed upon in the state court. Over these liens the jurisdiction of this court is exclusive. They will be protected in this court. Let the causes be retained until the state court has ordered the sale, or in any other mode releases its custody of the tug. See *The Oliver Jordan*, 2 Curt. 414.