## O. D. JENNINGS & CO. v. BUTER-BAUGH et al.

### Civ. A. No. 7661.

United States District Court
W. D. Pennsylvania.

March 30, 1950.

Edwin M. Clark, Indiana, Pa., for the plaintiff.

J. Murray Buterbaugh, District Attorney for Indiana County, Indiana, Pa., Fisher, Ruddock & Simpson, Indiana, Pa., (W. M. Ruddock and John S. Simpson, Indiana, Pa., of counsel), for the defendants.

FOLLMER, District Judge.

This is a motion by defendants to dismiss the action for the following reasons:

1. Because of the rule that a federal court will not ordinarily restrain local officers from enforcing criminal laws of a state, and there being no allegations in this action of such unusual or exceptional circumstances as would impel a federal court to deviate from this rule.

2. Because of the pendency of the action in the Court of Quarter Sessions of Indiana County, Pennsylvania, the slot machines being within the jurisdiction and under the control of said court, the plaintiff herein having voluntarily appeared and presented evidence and arguments of law in said proceeding.

3. Because of the ultimate question at issue between the parties hereto, the defendants have not exceeded the limitations of their police power as defined by the Constitution of the United States.

This is an action by O. D. Jennings & Company, an Illinois corporation, having its principal office in the City of Chicago,

State of Illinois, against J. Murray Buterbaugh, James F. Washington, and Paul W. Jeffries, respectively, District Attorney, County Detective, and Sheriff of Indiana County, Pennsylvania, all of whom are sued in their said official capacities, and all of whom reside in and are citizens of the Borough of Indiana, Indiana County, Pennsylvania.

The complaint alleges that the plaintiff is engaged, inter alia, in the manufacture of slot machines; that pursuant to an order from John Costello, Homer City, Pennsylvania, to ship to him, but to be consigned in the name of William J. Bryan, plaintiff did on or about March 10, 1948, ship 15 boxes containing slot machines from the City of Chicago, Illinois, consigned to William J. Bryan, Homer City, Pennsylvania; that the fair and reasonable market value of the 15 slot machines was $3,332; that the said machines were shipped C. O. D. in interstate commerce, to wit, by a common carrier, Pennsylvania Railroad Company, from Chicago, Illinois, to Homer City, Pennsylvania; that after the slot machines had reached Homer City, Pennsylvania, but before they had been delivered to the purchaser or consignee thereof, and before the sum to be collected on delivery had been paid to the common carrier, to wit, Pennsylvania Railroad Company, the defendants Washington and Jeffries, having first secured a warrant, jointly and severally seized and took possession of the boxes of slot machines from the freight house or warehouse of the said Pennsylvania Railroad Company at a time when the same were in interstate commerce within the meaning of Article 1, Section 8, of the Constitution of the United States. Further it alleges that after seizing and taking possession of the slot machines as aforesaid, the defendants removed the same to the basement of the Indiana County Jail, and although requested so to do, have refused to deliver same to plaintiff; that since the seizure of the slot machines as aforesaid, the purchaser or consignee has refused to pay for or accept the same, and that the defendants have instituted proceedings in the Court of Quarter Sessions of Indiana County, Pennsylvania, under the Penal Code of Pennsylvania, seeking an order for their destruction.

The complaint seeks judgment for the title to and possession of the slot machines, and further that defendants be permanently enjoined and restrained from destroying, damaging or removing the machines, and that defendants be ordered and directed to deliver possession and control of the machines to plaintiff or its agent, and be further restrained from prohibiting or interfering with plaintiff in shipping or transporting the machines out of the State of Pennsylvania.

It is admitted that after the seizure of the machines, the District Attorney of Indiana County, on April 5, 1948, filed a petition in the Court of Quarter Sessions of Indiana County, praying for an order to destroy the machines, and that plaintiff appeared and filed an answer to the said petition, and at the hearing notified the court of its intention to file a complaint in the United States District Court for the Western District of Pennsylvania, raising the question of jurisdiction and the right of local officers to seize goods in interstate commerce.

Defendants admit that the machines are in the possession of defendant Jeffries, Sheriff as aforesaid, but claim that he is not free to return them, destroy them, or dispose of them in any manner, as they are in custodia legis pending the outcome of the proceeding instituted as aforesaid in the Court of Quarter Sessions of Indiana County, to Number 56 March Sessions, 1948.

Transcending the question as to whether the Penal Code of the Commonwealth of Pennsylvania has been violated in the shipment of these slot machines or whether the Constitution of the United States has been violated by the seizure by the Sheriff and County Detective of Indiana County, Pennsylvania, of the crated machines from the warehouse of the carrier where they were held on a C. O. D. shipment, is the basic and fundamental question of jurisdiction. Following the seizure, the District Attorney presented his petition to the Court of Quarter Sessions of Indiana County, pray-

ing the court to adjudge the slot machines forfeited and to order that the same be publicly destroyed. The court set the petition down for hearing at which the present plaintiff appeared, testified, argued, and submitted briefs, and incidentally indicated to the court its intention of instituting the instant suit.

█ The proceeding in the Court of Quarter Sessions of Indiana County was instituted under the provisions of the Pennsylvania Act of March 31, 1860, P.L. 382, § 60, 18 P.S. § 1445. In Schuettler v. Maurer, 159 Pa.Super. 110, 112, 46 A.2d 586, 588, the court held, "The statutory procedure, indicated by the two sections of the Act of 1860 was intended to be exclusive to determine the legality of such seizure, as outlaw property, so long as the devices and money remained in the hands of the officer who seized it, or the district attorney, or the clerk of court, or otherwise in custody of law subject to the control of the quarter sessions court. The act is not explicit as to the practice in raising the issue nor the method of securing a hearing by the court. *The proceeding however is in rem* and the prior conviction of the owner on a charge of setting up a gambling device is not essential. * * * The issue may be raised on petition of the district attorney, or of a police or other officer, for an order of forfeiture of money and the destruction of gambling devices * * * or on petition of an owner seeking to recover possession of his property which had been seized. * * * But however raised, the quarter sessions has jurisdiction to decide the issue only so long as the property remains in custody of the law." (Emphasis supplied.) It is agreed that the slot machines are in the custody of the Sheriff and the County Detective in the basement of the Indiana County Jail. There is, therefore, no question but that this is an in rem proceeding; [1] that the property in question remains in the custody of the law and that the Court of

Quarter Sessions of Indiana County, Pennsylvania, acquired and still had jurisdiction of the res at the time of the institution of this suit.

Moore's Federal Practice, Vol. 2, Paragraph 3.06, in discussing the cause of conflict of jurisdiction between state and federal courts, states, inter alia, as follows:

"(1) where the federal and state courts have concurrent jurisdiction, as in diversity and general federal question cases, action *in personam* may proceed concurrently;

\* \* \* \* \* \*

"(3) a court having *in rem* or *quasi in rem* jurisdiction must necessarily have exclusive jurisdiction over the res involved to the extent necessary to achieve the objective of the suit".

█ Section 265 of the Judicial Code, 28 U.S.C.A. § 379, now incorporated and restated in the New Judicial Code, Effective Sept. 1, 1948 [2] provides that except as authorized by any law relating to proceedings in bankruptcy, "The writ of injunction shall not be granted by any court of the United States to stay proceedings in any court of a State, * * *." This Act is a derivative from the Act of March 2, 1793, c. 22, § 5, 1 Stat. 334, of which Justice Frankfurter in Toucey v. New York Life Insurance Co., 314 U.S. 118, at page 135, 62 S.Ct. 139, at page 145, 86 L.Ed. 100, 137 A.L.R. 967 a case involving the right of a federal court to maintain its jurisdiction of the res over which it had acquired prior control, said, "The Act of 1793 expresses the desire of Congress to avoid friction between the federal government and the states resulting from the intrusion of federal authority into the orderly functioning of a state's judicial process. The reciprocal doctrine of the *res* cases is but an application of the reason underlying the Act. Contest between the representatives of two distinct judicial systems over the same phy-

---

1. See also Mills Novelty Company's Appeal, 316 Pa. 449, at page 460, 175 A. 548.

2. 28 U.S.C.A. § 2283, "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." While rephrased, the content, as affecting this situation, has not been changed.

sical property would give rise to actual physical friction. The rule has become well settled, therefore, that Section 265 does not preclude the use of the injunction by a federal court to restrain state proceedings seeking to interfere with property in the custody of the court. \* \* \* And where a state court first acquires control of the *res,* the federal courts are disabled from exercising any power over it, by injunction or otherwise. \* \* \* "

Subsequently, in a similar situation in Mandeville v. Canterbury, 318 U.S. 47, at page 48, 63 S.Ct. 472, at page 473, 87 L.Ed. 605, referring to Section 265 above referred to, the court again stated,

"To this sweeping command there is a long recognized exception that if two suits pending, one in a state and the other in a federal court, are *in rem* or quasi *in rem,* so that the court or its officer must have possession or control of the property which is the subject matter of the suits in order to proceed with the cause and to grant the relief sought, the court first acquiring jurisdiction or assuming control of such property is entitled to maintain and exercise its jurisdiction to the exclusion of the other.

"In such cases this Court has uniformly held that a federal court may protect its jurisdiction thus acquired by restraining the parties from prosecuting a like suit in a state court notwithstanding the prohibition of § 265. This exception to the prohibition has been regarded as one of necessity to prevent unseemly conflicts between the federal and state courts and to prevent the impasse which would arise if the federal court were unable to maintain its possession and control of the property, which are indispensable to the exercise of the jurisdiction it has assumed. But where the judgment sought is strictly *in personam* for the recovery of money or for an injunction compelling or restraining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation at least until judgment is obtained in one court, which

may be set up as res judicata in the other. \* \* \* " [3]

Under the circumstances of this case and applying the applicable principles so clearly enunciated by the Supreme Court, it seems to me that this Court's first concern is to preserve as far as possible the delicate balance of authority between the state and federal judiciary. This motivating principle was well expressed by the Supreme Court in Covell v. Heyman, 111 U.S. 176, at page 182, 4 S.Ct. 355, at page 358, 28 L. Ed. 390, "The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which comes from concord; but between state courts and those of the United States, it is something more. It is a principle of right and of law, and therefore of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system, so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void. The regulation of process, and the decision of questions relating to it, are part of the jurisdiction of the court from which it issues. \* \* \* "

We are, therefore, not presently concerned with the question as to whether these slot machines, still in their original shipping crates, are per se gambling devices or otherwise violative of the Pennsylvania Criminal Code, or whether, at the time of their seizure, they were in interstate commerce and, if so, whether for any reason

**3.** For a succinct statement of the question of law here involved and extensive citation of authorities, see 21 C.J.S., Courts, § 529.

they were susceptible of seizure by state officers. These are matters that call for determination by the court having first secured jurisdiction of the res.[4]

Motion of defendants to dismiss the complaint is granted.

---

[4]. Plaintiff relies in part on Pace Mfg. Co. v. Milliken, D.C., 70 F.Supp. 740, the facts of which are substantially the same as in the instant case. Without expressing an opinion as to the court's decision on the merits in that case, I am unable to follow it in so far as the assumption of jurisdiction by the federal court is involved. This question does not appear to have been raised in that case.