**AMERICAN CIVIL LIBERTIES UNION, a non-profit corporation, et al., Plaintiffs-Appellants,**

v.

**Melvin R. LAIRD, Secretary of Defense, et al., Defendants-Appellees.**

No. 71-1159.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 26, 1972.

Decided May 23, 1972.

Rehearing Denied July 12, 1972.

Alexander Polikoff, Bernard Weisberg, Henry L. Mason III, Joel J. Sprayregen, Thomas N. Todd, Chicago, Ill., for plaintiffs-appellants.

James R. Thompson, U. S. Atty., Chicago, Ill., for defendants-appellees.

Before HASTINGS, Senior Circuit Judge, and STEVENS and SPRECHER, Circuit Judges.

STEVENS, Circuit Judge.

In this class action plaintiffs claim that the United States Army collects and retains more information about civilians than it needs. They pray for an injunction against the Army's massive domestic intelligence operation because it discourages the free expression of ideas.

Plaintiffs are members of the class represented by Arlo Tatum and other named plaintiffs in litigation commenced in the United States District Court for the District of Columbia on February

17, 1970, in which the same claims are asserted. After that case was filed and the public became aware of the scope of the Army's domestic intelligence activities, hearings were held by a committee of the United States Senate in which the Army was severely criticized. On or about June 7, 1970, the Army discontinued most of the unnecessary speech inhibiting intelligence activities of which plaintiffs complain.

On April 29, 1970, the District Court for the District of Columbia dismissed the *Tatum* complaint on the ground that it raised issues which were not justiciable. On May 4, 1970, notices of appeal were filed, and on April 27, 1971, the Court of Appeals for the District of Columbia rendered scholarly opinions, Tatum v. Laird, 144 U.S.App.D.C. 72, 444 F.2d 947, exhaustively discussing the legal issues, reversed the district court order and remanded the case for trial. Subsequently, the Supreme Court granted certiorari, heard oral argument, and now has the *Tatum* case under advisement.

The case before us was filed on December 21, 1970. Immediately thereafter plaintiffs moved for a preliminary injunction and defendants filed a motion to dismiss the complaint. In response to defendants' motion to dismiss, plaintiffs' counsel repeatedly urged the court to listen to the evidence to be offered in support of the application for a preliminary injunction and to evaluate the sufficiency of the pleading in the light of that evidence. Accordingly, the trial judge heard evidence for four days, found that the Army had indeed engaged in some unnecessary—in fact some stupid and wasteful—intelligence activities, but found no significant threat to First Amendment freedoms, and therefore denied injunctive relief and dismissed the complaint.

We are satisfied that the complaint was properly dismissed. Since the Supreme Court opinion in *Tatum* will no doubt render our discussion of

the law obsolete, we shall only briefly identify the reasons for our conclusion which, we are convinced, will be the same whether *Tatum* is affirmed or reversed.

First, we assume, without deciding, that a "massive" domestic intelligence operation conducted by the United States Army can have a sufficient deterrent effect on the free expression of political ideas to give individual citizens affected thereby standing to challenge the legitimacy of such an operation.

Second, we assume, without deciding, that the domestic intelligence activities as conducted by the Army prior to June 7, 1970, were illegitimate, and that the excesses could be excised by judicial decree.

Third, the evidence in the record, as appraised both by the district court and by this court, establishes that the Army's intelligence activities subsequent to June 7, 1970—or more specifically on December 21, 1970, when the complaint was filed—were not of the massive, overly broad character described in the complaint and in counsel's argument. Thus, the claimed intrusion on First Amendment rights was clearly less significant at the time this complaint was filed than it was at the time the *Tatum* complaint was filed.

Fourth, to the extent plaintiffs' claims are justiciable, they can be most effectively asserted in the *Tatum* litigation. Both this complaint and the *Tatum* complaint[1] are class actions; except for different named class representatives and other differences of no significant import, the allegations of the two complaints and the prayers for relief are identical—in most instances the complaint in this case reproduces verbatim the language of the *Tatum* complaint; a reading of the complaint leads one to the inescapable conclusion that the two classes are identical; the evidence adduced at the hearing on the preliminary injunction indicates, even if the parallel complaints did not, that there is cooper-

---

1. That complaint is in the record as an attachment to the defendants' motion to dismiss.

ation between the *Tatum* plaintiffs and the plaintiffs in this case and that the same witnesses would give important testimony in both proceedings. If there is some difference in the allegations of the two complaints which we have overlooked, it would be a simple matter to amend the *Tatum* complaint if the Supreme Court affirms the remand of that case for trial.

If the Supreme Court holds that the allegations in the *Tatum* complaint may not be tried, that ruling will certainly dispose of this case as well. If, however, that Court affirms the Court of Appeals for the District of Columbia and *Tatum* is remanded for trial, no purpose will be served by conducting a duplicate trial in this Circuit.

We conclude that if the issues presented by this complaint are to be tried, the principle of comity dictates that they be tried in the District Court for the District of Columbia. Though rejecting its application on the facts of the case before him, Judge Hastings has concisely stated the relevant principle:

"Briefly, the comity doctrine is one based on notions of sound judicial administration and requires that when two identical actions are filed in courts of concurrent jurisdiction, the one which first acquired jurisdiction should be the one to try the lawsuit. The purposes of the rule are to avoid unnecessarily burdening courts and to avoid possible embarrassment from conflicting results." Great Northern Railway Co. v. National Railroad Ad-

justment Board, 422 F.2d 1187, 1193 (7th Cir. 1970).[2]

Plaintiffs seek declaratory and injunctive relief; it is therefore especially appropriate that the principles of comity be applied. Mr. Justice Frankfurter has written:

"The Federal Declaratory Judgments Act, facilitating as it does the initiation of litigation by different parties to many-sided transactions, has created complicated problems for coordinate courts. Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems. The factors relevant to wise administration here are equitable in nature. Necessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts. . . ." Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 183–184, 72 S.Ct. 219, 221, 96 L.Ed. 200.

Here, the issues were first raised in the District of Columbia litigation. As to the two cases, as we have noted, the class is the same; the allegations are the same; the prayers for relief are the same. If the requested relief is granted in the *Tatum* litigation, there is no additional relief that plaintiffs could obtain in this circuit. If injunctive relief is required, it is best administered by one court; that court should be the one in which the relief was first sought.

---

2. The doctrine of comity is not new, of course. See Covell v. Heyman, 111 U.S. 176, 182, 4 S.Ct. 355, 358, 28 L.Ed. 390:
"The forbearance which courts of coordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity with perhaps no higher sanction than the utility which comes from concord. . . ."
See also Kline v. Burke Construction Co., 260 U.S. 226, 229, 43 S.Ct. 79, 67 L.Ed. 226; Milwaukee Gas Specialty Co. v. Mercoid Corp., 104 F.2d 589, 592 (7th Cir.

1939). Later cases include Hilton Hotels Corp. v. Weaver, 117 U.S.App.D.C. 83, 325 F.2d 1010 (1963), cert. denied, 376 U.S. 951, 84 S.Ct. 968, 11 L.Ed.2d 971; Mattel, Inc. v. Louis Marx & Co., 353 F.2d 421, 423–424 (2nd Cir.), cert. dismissed, 384 U.S. 948, 86 S.Ct. 1475, 16 L.Ed.2d 546; Mann Manufacturing, Inc. v. Hortex, Inc., 439 F.2d 403, 408 and n. 6 (5th Cir. 1971). As the cited cases indicate, the problem most often arises in patent litigation; application of the doctrine may or may not result in deferral to the jurisdiction of first filing, depending on the facts of the case.

In view of the serious character of the charges in the complaint and the representations made in support of the application for a preliminary injunction, we believe the Chancellor properly exercised his discretion in conducting an evidentiary hearing notwithstanding the fact that an analogous class action had been dismissed by the District Court for the District of Columbia. Since there had been no formal determination of the class in that proceeding, these plaintiffs were not barred from commencing this litigation. On the other hand, equitable considerations also support a decision to abstain from permitting a second class action involving the same issues to proceed if the *Tatum* complaint is ultimately upheld. Quite obviously the judiciary should proceed with the utmost restraint in litigation seeking to enjoin activities carried on by the Army. Even assuming an overriding public interest in the prosecution of one such case, there is no pressing need for a second.

Wise judicial administration requires that we defer to the jurisdiction of the District of Columbia district court. Accordingly, we affirm the order denying the motion for preliminary injunction and hold that the complaint was properly dismissed. That determination of course, is made without prejudice to whatever rights plaintiffs or other members of the class which they represent may have.

Affirmed.

## ORDER ON PETITION FOR RE-HEARING

On June 6, 1972, plaintiffs-appellants filed a timely Petition for Rehearing to Modify Opinion to Stay Rather Than Dismiss Proceedings, in which they persuasively suggested that the principle of comity, which underlay our decision, made it appropriate to defer final action in this litigation until after the Supreme Court rendered its opinion in Laird v. Tatum. Petitioners suggested that a reversal of the Court of Appeals for the District of Columbia would not necessarily be dispositive of this litigation. Recognizing possible merit in this suggestion, we withheld action on the petition pending the Supreme Court decision which was announced on June 26, 1972. 408 U.S. 1, 92 S.Ct. 2318, 33 L. Ed.2d 154.

Petitioners advance four points of distinction between this case and *Tatum*: (1) the *Tatum* plaintiffs were not actually "aggrieved," whereas these plaintiffs alleged and testified that.they had been harmed; (2) *Tatum* involved only the collection of public information, whereas this case involves surveillance of private conduct as well; (3) whereas *Tatum* merely involved a plan to disseminate information outside the military, this case involves proof of such dissemination; and (4) this case primarily involves this region, whereas *Tatum* involved the entire country.

The rationale of the opinion of the Supreme Court is fairly applicable to regional as well as national activities; moreover, the opinion contains several references to the exchange of information between military and non-military sources. The third and fourth points must therefore be rejected. The other two points are not, however, explicitly covered by the opinion of the majority. We are nevertheless persuaded that they were implicitly rejected by the Court.

Basically, the harm to the plaintiffs-appellants about which they testified was the fact that some of them had been the targets of military surveillance. The dissenting opinions in *Tatum* indicate that similar harm was disclosed by that record.[1] Necessarily, therefore, the

1. Mr. Justice Douglas states: "Respondents were targets of the Army's surveillance." 92 S.Ct. at 2332. Mr. Justice Brennan quotes the following from Judge Wilkey's opinion:

"The record shows that most if not all of the [respondents] and/or the organizations of which they are members have been the subject of Army surveillance reports and their names have appeared in the Army's records." 92 S.Ct. at 2338.

Court held that such harm was not actionable.

How much "private" information about the *Tatum* plaintiffs had been collected is by no means clear. Mr. Justice Douglas stated that "the Army's surveillance was not collecting material in public records but staking-out teams of agents, infiltrating undercover agents, creating command posts inside meetings, posing as press photographers and newsmen, posing as TV newsmen, posing as students, shadowing public figures." 92 S.Ct. at 2332. We have again reviewed the record in the case before us. Although there is evidence of "covert" activity that should not be condoned, we are persuaded that neither that evidence nor the allegations in the complaint set forth a valid basis for distinguishing *Tatum*. Accordingly, we adhere to our original opinion that a Supreme Court holding that the allegations of the *Tatum* complaint may not be tried is dispositive of this case as well.

The petition for rehearing is denied.