**Richard HABINIAK, Plaintiff,**

v.

**RENSSELAER CITY MUNICIPAL CORPORATION, Defendant.**

No. 95–CV–1602.

United States District Court, N.D. New York.

March 19, 1996.

Richard Habiniak, Rensselaer, New York, Pro Se.

McCarthy, Evanick Law Firm, Albany, New York (David A. Dellehunt, of counsel), for Defendant.

## MEMORANDUM, DECISION, AND ORDER

McAVOY, Chief Judge.

Plaintiff *pro se* Richard Habiniak commenced this action on November 13, 1995, asserting RICO and Fourteenth Amendment violations. Defendant Rensselaer City Municipal Corporation filed its answer and affirmative defenses on December 11. Plaintiff then filed a motion to strike defendant's affirmative defenses as legally insufficient and a motion for partial summary judgment with respect to his due process claim. After summarizing the factual allegations giving rise to plaintiff's causes of action, the Court will consider these motions in turn.

## I. Background

According to plaintiff, police officers from the Rensselaer City Police Department (RCPD) arrested him and conducted a warrantless search of his home three months after a confidential informant for the RCPD purchased a small quantity of marijuana from plaintiff's wife, Debra Habiniak. Plaintiff alleges that he was subsequently charged on three drug-related counts and one fireworks count. On November 28, 1989, plaintiff allegedly entered a plea agreement pursuant to which he pled guilty to the charge of criminal possession of marijuana. At a state-court hearing later that day, plaintiff allegedly received a three-year probationary sentence and was ordered to pay a $1,000 fine; the remaining three charges were dismissed.

On September 5, 1991, the United States commenced a civil forfeiture action against plaintiff's home in the District Court for the Northern District of New York by filing a verified complaint and supporting affidavit. (P's Ex. A.) The Government's verified complaint alleged that on May 23, 1989, plaintiff sold 6.82 grams of marijuana to a "cooperating individual" on plaintiff's premises for $45.00, and that on August 29, 1989, a search of plaintiff's property uncovered six ounces of marijuana packaged for sale, plastic baggies, a scale for weighing marijuana, and approximately $415.00 in currency. (*Id.*) On the same day, the Government allegedly filed a notice of pendency with respect to plaintiff's house, which apparently affected plaintiff's ability to secure a loan on September 23. Pursuant to this Court's issuance of a Warrant of Seizure and Monition on February 7, 1992, (P's Ex. B), the United States Marshall Service for the Northern District of New York allegedly seized plaintiff's home and executed an "occupancy agreement" permitting plaintiff to reside in it pending final disposition of the forfeiture action. According to plaintiff, at no time during the pendency of the federal government's action did defendant file a verified claim on the subject property.

At this point, the procedural history of this case becomes somewhat complex. For the sake of brevity and clarity, the Court will only mention the major procedural incidents. On April 19, 1993, the County Court of the County of Rensselaer, New York, allegedly conveyed title to the subject property from plaintiff to defendant pursuant to Article 11,

Title 3 of New York's Real Property Tax Law. (P's Ex. C.) It appears from the County Court judgment, captioned *In the Matter of the Foreclosure of Tax Liens on Property in the City of Rensselaer, New York Pursuant to Article 11, Title 3 of the Real Property Tax Law by John J. Dwyer as City Treasurer and Enforcing Officer of the City of Rensselaer by Action In Rem,* Judgment Index No. 176702, RJI # CC–0017–92 (April 19, 1993), that defendant obtained title to the subject property, as well as a number of other parcels, by foreclosing tax liens.

Seven days later, on April 27, this Court ruled that the value of the subject property, less the cost of government investigation and enforcement, was overwhelmingly disproportionate to the value of marijuana plaintiff possessed or the appropriate criminal fine for plaintiff's conduct. Accordingly, the Court dismissed the Government's forfeiture action on Eighth Amendment grounds. *United States v. Real Property: 835 Seventh Street,* 820 F.Supp. 688 (N.D.N.Y.1993), *appeal dismissed,* 28 F.3d 103 (2d Cir.1994). On August 30, 1993, upon motion for reconsideration, the Court permitted the Government to supplement the record, but otherwise upheld its earlier dismissal of the forfeiture action. *United States v. Real Property: 835 Seventh Street,* 832 F.Supp. 43 (N.D.N.Y.1993). Although unmentioned in plaintiff's Complaint or Memorandum of Law, he filed a petition with this Court in December, 1993, for an Injunction Pendente Lite and a Protective Order, with a view to enjoining defendant "from initiating any action or proceedings against petitioner's property known as 835 7th Street, Rensselaer, New York." *United States v. Real Property: 835 Seventh Street,* 1993 WL 513283 (N.D.N.Y. Dec. 2, 1993). Because of procedural defects in his petition, the Court denied plaintiff the relief he sought. On October 21, 1995, plaintiff allegedly received a letter from defendant's corpo-ration counsel instructing him to vacate the subject property by November 30, 1995.

## II. Motion to Strike Affirmative Defenses

██ In his sentence-long Memorandum of Law to Strike Defendant's Affirmative Defenses, plaintiff cites *Heller Financial, Inc. v. Midwhey Powder Co.,* 883 F.2d 1286, 1294 (7th Cir.1989), to support his assertion that all six of defendant's affirmative defenses are legally insufficient.[1] Regardless of how the Seventh Circuit treats motions to strike affirmative defenses for legal insufficiency, this Court follows the Second Circuit principle disfavoring such motions and the Second Circuit rule that such motions are not granted " 'unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.' " *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.,* 744 F.2d 935, 939 (2d Cir.1984) (citing *Durham Industries, Inc. v. North River Ins. Co.,* 482 F.Supp. 910, 913 (S.D.N.Y.1979)) (quoting *Lehmann Trading Corp. v. J. & H. Stolow, Inc.,* 184 F.Supp. 21, 22–23 (S.D.N.Y.1960)), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986). The *Salcer* court also cited with approval Wright and Miller's contention that "even when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1381, at 800–01 (footnotes omitted).

██ Applying these standards to the case at hand, the Court finds nothing amiss with any of defendant's affirmative defenses, which raise legal and factual issues concerning personal jurisdiction, the statute of limitations, the doctrine of laches, failure to state

---

1. Defendant included the following six affirmative defenses in its answer to plaintiff's Complaint:

   The court is without jurisdiction of the Defendant[;] [t]he causes of action alleged by Plaintiff are barred by the applicable statute of limitations[;] [t]he causes of action alleged by Plaintiff are barred by the reason of the doc-trine of laches[;] [p]laintiff fails to state a claim or cause of action upon which relief can be granted; [p]laintiff's causes of action are barred by reason of the doctrines of res judicata and collateral estoppel[; and] [p]laintiff has failed neglected and refused to fulfill a condition precedent to suit.
   (Answer ¶¶ 6–11.)

a claim, res judicata, and fulfillment of a condition precedent to suit. As a preliminary point, the Court notes that none of the affirmative defenses appears unusually vague, confusing, or legally bizarre; nor do they contain substantially less information than the overwhelming majority of affirmative defenses that parties in defensive postures typically file with this Court. All six affirmative defenses satisfy the *Salcer* standard; the Court can easily imagine the existence of facts that, if proven, would support them. Since plaintiff has not raised any arguments concerning the legal applicability or relevance of any of defendant's affirmative defenses, the Court is in a poor position to resolve the legal issues they present. When the parties have completed discovery and a hearing on the merits has been held, the Court or a jury will be in a much better position to consider the relevant law and facts and then determine the applicability and effect of defendant's affirmative defenses.

### III. Motion for Partial. Summary Judgment

#### A. Summary Judgment Standard

■■■ Plaintiff moves for partial summary judgment on his due process claim against defendant. Under Fed.R.Civ.Pro. 56(c), if there is "no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law ... where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *on remand*, 807 F.2d 44 (3d Cir.1986), *cert. denied*, 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985).

#### B. Discussion

■■■ According to plaintiff, he was deprived of his property without due process of law when the County Court of the County of Rensselaer, New York, conveyed title from plaintiff to defendant. The conveyance occurred on April 19, 1993—after the United States Marshal for the Northern District of New York seized the subject property on February 7, 1992, but before this Court dismissed the Government's forfeiture action on April 24, 1993. Plaintiff supports his assertion with cases in which courts have applied the rule, or variations on the rule, that a state court cannot interfere with a federal court's possession of property pending the outcome of a federal forfeiture action. *See, e.g., New York State Special Prosecutor v. United States Attorney for Southern District of New York*, 375 F.Supp. 797, 804 (S.D.N.Y. 1974) ("[T]he court which first assumes control over the subject matter of litigation—be it persons or property—shall retain exclusive jurisdiction over it until it has exhausted its remedies.") The Supreme Court made one if its earliest and clearest pronouncements of the rule in *Covell v. Heyman*, 111 U.S. 176, 182, 4 S.Ct. 355, 358, 28 L.Ed. 390 (1884):

> [State and federal courts] exercise jurisdiction ... within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that res is as much withdrawn from the judicial power of the other as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void.

*See also United States v. Stowell*, 133 U.S. 1, 16, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1890); (holding that when a federal statute calls for forfeiture of property used in connection with criminal activity, commission of the relevant criminal offense constitutes a forfeiture of the property to the United States; "the forfeiture constitutes a statutory transfer of the right to the United States at the time the offense is committed; and the [judicial] condemnation, when obtained, relates back to that time, and avoids all intermediate sales and alienations, even to purchasers in good faith."); *In re Tarble*, 80 U.S. 397, 407, 20 L.Ed. 597 (1871) (remarking that "within

their respective spheres of action, ... neither [a state government nor the federal government] can intrude with its judicial process into the domain of the other, except so far as such intrusion may be necessary on the part of the National government to preserve its rightful supremacy in cases of conflict of authority.").

No one can reasonably quarrel with the well-settled rule announced and applied in the cases just cited. None of these cases suggest, however, that if a court violates the rule, it thereby deprives the disenfranchised owner of rights guaranteed by the Due Process Clause of the Fourteenth Amendment. Comity, rather than due process, furnishes the reason behind the rule. *See Covell,* 111 U.S. at 182, 4 S.Ct. at 358. Plaintiff has failed to explain how the County Court's conveyance, even if it invaded the sovereignty of the district court, deprived him of property without due process or infringed any other constitutional right of his. Furthermore, plaintiff fails to indicate how the County Court conveyance, apart from its apparent conflict with the rule of comity, violated his due process rights. According to the County Court, the conveyance occurred after the requisite publication of a notice of foreclosure, after the mailing of such notice to all of the affected property owners, and after twenty days had elapsed since the last date for redemption as stated in the notice without the affected property owners filing an answer. It thus appears, and plaintiff does not contest, that he received notice and an opportunity to be heard prior to the County Court's conveyance of title and that he forewent his opportunity to try to prevent the foreclosure by informing the County Court of the pending federal forfeiture.

If plaintiff is entitled to restitution because the County Court conveyed the subject property to defendant during the pendency of a federal forfeiture action, he should seek restitution in New York State Court, rather than here. *See, e.g., Covell,* 111 U.S. at 179, 4 S.Ct. at 357 (stating that if a state court process disturbs a federal court's custody of property, "any person, not a party to the suit or judgment, whose property has been wrongfully, but under color of process, taken and withheld, may prosecute, by ancillary proceedings, in the court whence the process issued, his remedy for restitution of the property or its proceeds.")

## IV. Conclusion

As to plaintiff's first motion, the Court finds nothing amiss with defendant's affirmative defenses. As to his second motion, far from establishing that the Court should render judgment in his favor as a matter of law, plaintiff has given the Court some reason to suspect that he has failed even to state a Fourteenth Amendment claim on which relief can be granted.

IT IS THEREFORE ORDERED

That plaintiff's motion to strike defendant's affirmative defenses is DENIED; and it is further ORDERED

That plaintiff's motion for partial summary judgment on his Fourteenth Amendment claim is DENIED.

**SO ORDERED.**

